[No. 13001.   In Bank. —August 30, 1889.]

JOHN K. SIMPSON, RESPONDENT, *v.* JOSHUA SIMP-
SON ET AL., APPELLANTS.

80  237
d102 341

DIVORCE — DISPOSITION OF COMMUNITY PROPERTY — HOMESTEAD — TRUST —
JURISDICTION. — When, upon a decree of divorce in favor of the wife,
for extreme cruelty and habitual drunkenness of the husband, the home-
stead property is awarded to the wife, and the decree declares that the
property so awarded to her is to "be held by her in trust for her support,
and for that of the children of the parties," no definite or certain trust
is created, but an absolute and unlimited estate in the homestead prop-
erty is transferred to the wife. The court has no statutory power to
create a trust in the homestead or community property by a divorce
decree, but only to assign it to the innocent party absolutely or for a
limited period.

APPEAL from a judgment of the Superior Court of San
Joaquin County.

The facts are stated in the opinion.

*L. W. Elliott,* for Appellants.

*Baldwin & Campbell,* and *Edward I. Jones,* for Re-
spondent.

VANCLIEF, C. — Whilst the plaintiff and Roxanna
Simpson were husband and wife they acquired title to
the land described in the complaint by patent from the
United States to plaintiff. Afterwards, whilst they, with
their children, were residing upon the land, the wife
executed, acknowledged, and recorded a declaration of
homestead upon the land, the validity of which is not
questioned. Thereafter the wife brought an action
against the plaintiff herein for a divorce on the grounds
of extreme cruelty and habitual drunkenness, in which,
on the tenth day of September, 1875, the district court
rendered a judgment and decree without written findings
other than recited in the decree, of which the following
is a copy:—

"In the district court of the fifth judicial district of the state of California, in and for the county of San Joaquin.

"Roxanna Simpson, plaintiff, *v.* John K. Simpson, defendant.

"In this action, it appearing to the satisfaction of the court, from the evidence in the action, that the defendant herein has been guilty of extreme cruelty as charged in the complaint in this action, and that said defendant has been for two years last past an habitual drunkard,—

"It is therefore ordered, adjudged, and decreed that the bonds of marriage between plaintiff and defendant be and they are hereby dissolved, and said parties are and each of them is hereby released from all of the obligation thereof.

"And it is further ordered, adjudged, and decreed that the plaintiff in this action have and own and that she be entitled to the possession of the homestead and common property in the complaint described in this action, with the exception of three horses, their harness, and a wagon, and that said defendant have and own said horses, harness, and wagon as his separate property.

"It is further ordered, adjudged, and decreed that the children of plaintiff and defendant be, until the further order of this court, with the exception of their son John J. Simpson, awarded to the care and custody of plaintiff, and that the care and custody of their said son John J. Simpson, until the further order of this court, be awarded to said defendant.

"It is further ordered that said homestead property hereby awarded to plaintiff be held by her in trust for her support and for that of the children of the parties to this action.

"It is further ordered and adjudged that the said parties to this action be and each of them is authorized to visit and enjoy the society of their children at all suitable times and occasions.          "S. A. BOOKER, District Judge.

"September 10, 1875."

On September 6, 1877, Roxanna Simpson died, leaving her surviving eight children of her marriage with the plaintiff, who are the defendants in this action, and three of whom were still minors when the judgment in this action was rendered.

The object of the action is to quiet plaintiff's alleged title to said homestead land, which title is denied by the defendants.

What was the effect of the divorce decree upon the husband's title to the homestead? is the only question presented for decision.

Upon the foregoing facts the trial court adjudged that from and after the entry of the decree of divorce Roxanna Simpson and the plaintiff held and owned the homestead land "as tenants in common, subject to the trust declared in said decree for the benefit of said Roxanna and her children; that so long as any of said children are under age, said property must be held in trust for his or their support and maintenance; and that when the youngest of said children arrives at the age of majority, said John K. Simpson will be entitled to have, hold, and own an undivided one-half interest therein relieved from said trust."

Subdivision 3 of section 146 of the Civil Code provides, in case of a divorce, that " if the homestead has been selected from the community property, it may be assigned to the innocent party, either absolutely or for a limited period, subject in the latter case to the future disposition of the court."

The third paragraph of the divorce decree expresses an absolute, unconditional assignment of the homestead property to the wife,—"the innocent party,"—in pursuance of the authority conferred upon the court by the above section of the code, unlimited to any period of time, and which is not limited to any period by any other part of the decree; nor, properly construed, does the fifth paragraph of the decree reduce the estate as-

signed to a trust, or otherwise qualify its absolute character.

The meaning of the fifth paragraph of the decree is certainly indefinite and obscure, and therefore properly subject to construction. The intent to create a trust does not clearly appear from the language of the decree itself, to say nothing of other considerations which may be properly invoked as aids to the construction.

In section 1009 of Pomeroy's Equity Jurisprudence, the author says: "The declaration of trust, whether written or oral, must be reasonably certain in its material terms; and this requisite of certainty includes the subject-matter or property embraced within the trust, the beneficiaries or persons in whose behalf it is created, the nature and quantity of interests which they are to have, and the manner in which the trust is to be performed. If the language is so vague, general, or equivocal that any of these necessary elements of the trust is left in real uncertainty, then the trust must fail." The decree under consideration is uncertain as to what interest the children are to have. Are they entitled to support for life, or only during their minority? When a part of them arrive at the age of majority or die, is the interest of the infants or survivors thereby increased? Under any circumstances, would the beneficiaries be entitled to have the land sold and the proceeds expended for their support? or are they limited to the rents and profits? In case the rents and profits should be more than sufficient to support those entitled to support, what disposition is to be made of the surplus? Who would be entitled to call upon the trustee to account for such surplus? And finally, in what manner is the trust to be performed?

Again, in the same section, the author proceeds to say: "No particular technical words need be used; even the words 'trust' or 'trustee' are not essential. Any other words which unequivocally show an intention that the legal estate was vested in one person, but to be held

in some manner or for some purpose on behalf of another, if *certain as to all other requisites,* are sufficient. On the other hand, if the words 'trust' or 'trustee' are employed, they do not necessarily show an intention to create or declare a trust." (See also Perry on Trusts, sec. 83.)

As to the inference of a trust from the use of the words "for her support and for that of the children," and like words and phrases, Mr. Pomeroy says (section 1012): "No definite rule can be laid down; each case must stand upon its own circumstances. If the language is sufficient for the intention to be clearly inferred, the trust will be enforced; otherwise the donee will take an absolute estate, and the provisions concerning maintenance will be regarded as mere motives for the gift and recommendations addressed to his discretion."

The words in the divorce decree from which it is claimed that a trust may be inferred immediately follow the paragraph giving the wife the custody of seven minor children, and thereby casting upon her the duty of supporting and educating them, regardless of any aid which the court might allow her from the property of her husband. Under these circumstances it seems not to have been inappropriate for the court to express, as a reason or motive for giving her the homestead, that it was intended for the support of herself and children, for which, by the decree, she had been made solely responsible.

Another consideration tending to support the construction here given to the decree is, that the law did not authorize the court to assign the homestead or any equitable interest in it to the children, nor to the wife *in trust* for any purpose; and in the absence of a reasonably clear expression to the contrary, the court must be presumed to have intended to act within the scope of its authority, and not to exceed it. The authority of the court, in actions for divorce, to transfer the property of

either party to the other, or otherwise to dispose of it, is purely statutory; and the statute did not authorize the court to create a trust in the homestead or community property, but only to assign it directly to the innocent party "*absolutely,* or for a *limited* period." If any trust was created in this case by the divorce decree, it must have been a direct or express trust, created, not by the owner personally, nor by any agency authorized by him, but by the court acting by authority of law; but it is plain that the court had no such statutory authority, and our courts have no common-law authority to create any kind of trusts, certainly not express trusts. In the exercise of equity jurisdiction, they find and adjudge trusts to exist by reason of contracts, devises, bequests, gifts, or wrongful or fraudulent acts, and may always appoint trustees when necessary to execute them, but never, by common-law authority, create them. It should be further remarked in this connection, that, as to the interest given to the wife, she could not be trustee for herself, it being a legal impossibility for a person to be both trustee and *cestui que trust* at the same time (Perry on Trusts, sec. 13), and, moreover, that it is at least doubtful whether an express trust, for the purpose claimed in this case, is authorized by our Civil Code, sections 847 and 857; since it is not expressed nor clearly implied in the divorce decree that the rents and profits, only, of the homestead property were to be applied to the use of the wife and children. Indeed, " rents and profits" are not mentioned in the decree.

It is not necessary or proper to decide what would have been the effect of a decree (as to being void or only voidable by appeal) clearly expressing an assignment of the homestead in trust, since it appears, by proper construction of the decree rendered, that by it the court did not intend to create a trust, or to limit or qualify the absolute assignment to the wife expressed in the third paragraph of the decree.

I think the judgment should be reversed, and that the trial court should be directed to give judgment for the defendants upon the findings of fact.

Gibson, C., and Belcher, C. C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment is reversed, and the court below directed to enter judgment for the defendants upon the findings of fact.

Paterson, J., took no part in the decision of the above cause.

Rehearing denied.