[Civ. No. 4810. First Appellate District, Division One.—September 19, 1924.]

# HARRY G. McKANNAY, Appellant, v. MARY E. McKANNAY, Respondent.

[1] DIVORCE—SUPPORT OF CHILDREN—NATURE OF ALLOWANCE—TRUSTS—JURISDICTION.—The law limits the power of the court, in a divorce action, in making provision for the support of the children to an allowance in money, and while it may require the husband to give reasonable security for the payment of such allowance, even by declaring that the allowance shall be made a lien upon the husband's property, it cannot award the property to either spouse subject to trusts in favor of the children; and a portion of an interlocutory decree which creates a trust in favor of the children and sets aside for their use and benefit the family home and the furniture is in excess of the power of the court.

[2] ID.—DIVORCE GRANTED TO HUSBAND—ALLOWANCE FOR SUPPORT OF WIFE UNWARRANTED.—In a divorce action, an allowance cannot be made for the support of the wife where the divorce is granted to the husband for the fault of the wife.

[3] ID.—SUPPORT OF WIFE—SUPPORT OF CHILDREN—DUTY OF HUSBAND. It is only where the divorce is granted for the offense of the husband that an allowance for the support of the wife may be made, but this rule does not interfere with the power of the court, however, in a divorce proceeding, either at the time of the rendition of the decree or thereafter, to compel the husband to support his minor children, even though the divorce was granted for the fault of the wife and the custody of the children was awarded to her, it being the primary duty of the husband under such circumstances to support his minor children.

[4] ID.—INTERLOCUTORY DECREE—ILLEGALITY OF AWARD FOR SUPPORT. An interlocutory decree of divorce granted to the husband for the fault of the wife having awarded a monthly sum to the wife "for her support and for the support of said minors," the entire award was illegal.

1. See 9 Cal. Jur. 812.

2. Right of wife against whom an absolute divorce is granted to permanent alimony, notes, 20 Ann. Cas. 24; Ann. Cas. 1915C, 1254; 20 L. R. A. (N. S.) 421; 30 L. R. A. (N. S.) 73. See, also, 1 Cal. Jur. 1022; R. C. L. 936.

3. Father's liability for support of children as affected by decree awarding custody to mother, notes, 12 Ann. Cas. 138; 2 L. R. A. (N. S.) 851. See, also, 9 Cal. Jur. 804; 9 R. C. L. 480.

4. See 9 Cal. Jur. 758.

[5] Id. — Extreme Cruelty — Award of Less Than One-half of Community Property to Husband—Erroneous Decree.—In a divorce action, where the divorce was granted to the husband on the ground of the wife's extreme cruelty, the interlocutory decree in awarding to the husband less than one-half of the community property was erroneous.

[6] Id. — Evidence — Right of Wife to Full One-half of Community.—In such action, in view of the fact that the wife is denied the right to obtain alimony for her own support, and, owing to the helpless condition of an invalid daughter, will of necessity be required to devote her exclusive time and service to the care and comfort of said daughter, which will prevent her from accepting any remunerative employment for her own support, and, therefore, the share of the community property allotted to her by the court must serve as the only source of her sustenance, she is entitled, under such circumstances, to a full one-half of said community property.

[7] Id.—Community Property—Distribution.—The community property which shall be distributed upon a dissolution of the community by divorce is the residue which remains after the discharge of the community obligations.

[8] Id.—Debts Charged Against Husband—Nature of—Deduction from Community Property.—In such action, before a division of the community property can be made legally, the nature of certain debts charged against the husband must be definitely ascertained. If it be determined as a fact that they are community debts, then they should be deducted from the gross value of the community property, before a division thereof is made.

---

(1) 19 C. J., p. 357, sec. 816 (Anno.), p. 358, sec. 818. (2) 19 C. J., p. 244, sec. 568. (3) 19 C. J., p. 244, sec. 568, p. 355, sec. 814 (Anno.), p. 357, sec. 818; 38 Cyc., p. 1988. (4) 19 C. J., p. 357, sec. 818 (Anno.). (5) 19 C. J., p. 334, sec. 776. (6) 19 C. J., p. 334, sec. 776. (7) 19 C. J., p. 334, sec. 776. (8) 19 C. J., p. 334, sec. 776.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Warren V. Tryon, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Theodore J. Savage for Appellant.

Sawyer & Sawyer, F. W. Sawyer and Annette A. Adams for Respondent.

---

5. See 5 Cal. Jur. 358; 5 R. C. L. 860.

KNIGHT, J.—The appellant, Harry G. McKannay, was granted an interlocutory decree of divorce from his wife, the defendant Mary E. McKannay, upon the ground of extreme cruelty. Said decree, besides granting the divorce, made disposition of the community property and the custody of the children; it also directed that plaintiff satisfy certain debts and encumbrances and pay the sum of $225 per month for the support of the defendant and the two minor children while said children were in the custody of defendant; or in the event of the death of both of said children, to pay defendant, as alimony, the sum of $50 per month. The only portions of said decree not appealed from by plaintiff are those portions which grant the divorce to him and award the children to his wife; the appeal comes before us upon the judgment-roll alone.

As above stated, there are two children the issue of said marriage, a daughter, Mary Louise, and a son, Richard Hill, aged twelve and seven years respectively at the time the findings were made in 1922. At the time the decree was granted and for a period of four years prior thereto the defendant with said children resided in the home of the parties on Twentieth Avenue, in San Francisco. About two years prior to the granting of the divorce plaintiff left the family residence and thereafter resided in a hotel. It is alleged in the fourth affirmative defense of the answer that the daughter of said marriage has been a helpless invalid since infancy; that she is entirely dependent upon the care and attention of others; that "she must be fed, bathed, dressed, massaged, carried about from place to place, turned over in bed and cared for in other personal ways both day and night." While no findings were apparently made upon the matters set forth in said fourth affirmative defense the trial court doubtless took into consideration the health and physical condition of said daughter, as well as the age and circumstances of the other child in attempting to make a fair and just settlement of the property rights between the parties.

The provisions of the decree regarding the adjudication of the property and financial matters were as follows: "3. That defendant have and recover from plaintiff for her support and the support of said minors while she has their custody"

the sum of $225 per month; that defendant have "the right to occupy and use the family home of plaintiff and defendant together with the furniture and fixtures therein, while she has the custody of said minors. Plaintiff to pay all reasonable doctor and hospital bills for the care of said children provided he is given permission and allowed to name the doctor." 4. That the family home of plaintiff and defendant situate on Twentieth Avenue in the city of San Francisco be "set aside in trust for the use and benefit of the minor children . . . to endure as long as Mary Louise McKannay shall live, or in the event of her sooner demise, until Richard Hill McKannay shall arrive at the age of twenty-one, or if he should die before that time, until his death. Upon the termination of said trust the *corpus* thereof shall be divided equally between plaintiff and defendant, if they be living; or if one be deceased, then to the survivor; or if both be deceased, then to the heirs of the last survivor of them. During the trust plaintiff to pay all taxes and assessments thereon, insurance and necessary repairs." 5 (a) That plaintiff be awarded real and personal property (enumerating the same) of the gross value of $6,700, part of which (corporate stock of the value of $3,500) was pledged for the payment of a loan made to plaintiff in the sum of $3,971. 5 (b) That defendant be awarded real and personal property (enumerating the same) of the clear value of $4,500. 6. That in the event of the death of both of said children plaintiff pay to defendant "as alimony for her maintenance and support" the sum of $50 a month. 7. That plaintiff pay and satisfy four obligations, namely, a mortgage on the family home in the sum of $3,500, a promissory note given by plaintiff in the sum of $3,971 for the payment of which said corporate stock was pledged as aforesaid; a promissory note given by plaintiff for the sum of $1,000 and an open account of the plaintiff in the sum of $2,000.

Appellant is dissatisfied with the entire decree in so far as it relates to the property and financial settlement made by the court. He asks first for a reversal of that portion of said decree which allows his invalid daughter and his son and their mother to continue to occupy the family home. In this respect appellant contends "that there is nothing in the pro-

visions of the code relating to the property rights of the parties (secs. 139–148, Civ. Code), which by any stretch of the language employed authorizes the creation of a trust in such cases." It would seem that appellant's legal contention is correct. **[1]** The law limits the power of the court in making provision for the support of the children to an allowance in money (*Tremper* v. *Tremper,* 39 Cal. App. 62 [177 Pac. 868]), and while it may require the husband to give reasonable security for the payment of such allowance (sec. 140, Civ. Code), even by declaring that the allowance shall be made a lien upon the husband's property (*Robinson* v. *Robinson,* 79 Cal. 511 [21 Pac. 1095]; *Tremper* v. *Tremper, supra; Huellmantel* v. *Huellmantel,* 117 Cal. 407 [49 Pac. 574]; *Gaston* v. *Gaston,* 114 Cal. 542 [55 Am. St. Rep. 86, 46 Pac. 609]), it cannot award the property to either spouse subject to trusts in favor of the children. (*Simpson* v. *Simpson,* 80 Cal. 237 [22 Pac. 167].) It follows that that portion of the decree creating a trust in favor of the children and setting side for their use and benefit the family home and the furniture was in excess of the power of the court.

**[2]** It must also be held that those portions of said decree awarding respondent $225 a month "for her support and for the support of the said minors" and of the sum of $50 a month "in the event of the death of both children" are likewise erroneous, for the reason that an allowance cannot be made for the support of the wife where the divorce is granted to the husband for the fault of the wife. (*Lamson* v. *Lamson,* 171 Cal. 332 [153 Pac. 238]; *Everett* v. *Everett,* 52 Cal. 383; *Ex parte Spencer,* 83 Cal. 460 [17 Am. St. Rep. 266, 23 Pac. 395].) **[3]** It is only where the divorce is granted for the offense of the husband that such support may be awarded to the wife. (Sec. 139, Civ. Code.) This rule does not interfere with the power of the court, however, in a divorce proceeding, either at the time of the rendition of the decree or thereafter, to compel the husband to support his minor children, even though the divorce was granted for the fault of the wife and the custody of the children was awarded to her. It is the primary duty of the husband under such circumstances to support his minor children. (*Lamson* v. *Lamson, supra; Ex parte Gordon,* 95

68 Cal. App.—45

Cal. 374 [30 Pac. 561].) But the decree here awards the sum of $225 a month to respondent *"for her support* and for the support of said minors." (Italics ours.) **[4]** Having thus awarded an unlimited amount of said allowance for the support of the respondent the entire award becomes illegal.

In reference to the adjudication of the community property rights there was awarded absolutely to respondent, property of the clear value of $4,500, consisting of the following: An unimproved lot of the value of $3,000; corporate stock of the value of $1,000; an automobile of the value of $500. To appellant there was awarded real and personal property of the gross value of $6,700, consisting of the following: Three unimproved lots of a total value of $2,300; stock in a copper company of the value of $100; stock in an oil company of the value of $3,500; an automobile of the value of $500; cash, $300. The oil stock, however, was pledged to a bank as security for the payment of a promissory note for the sum of $3,971, which note was given by appellant for money borrowed by him. Conceding that this indebtedness shall be deducted, it eliminates the full value of said oil stock from appellant's share of the community property and thereby reduces the net value thereof to $3,200, which is $1,300 less than the amount of property awarded to respondent. The total net value of the property received by appellant is, therefore, $650 less than the amount appellant should have received in order to make an equal division. In the above calculation there is no allowance made for the unsecured debts appellant was by the decree directed to pay.

The contention is made that "since appellant was entitled to a divorce from respondent on the ground of extreme cruelty he was entitled at the very least to one-half of the community property and the court should not and could not award him less." Supporting this contention appellant cites *Gorman* v. *Gorman,* 134 Cal. 378 [66 Pac. 313]; *Vragnizan* v. *Savings Union etc. Co.,* 31 Cal. App. 709 [161 Pac. 507]; *Thomsen* v. *Thomsen,* 31 Cal. App. 185 [159 Pac. 1054]; *Nave* v. *Nave,* 35 Cal. App. 27 [169 Pac. 253]. The rule stated in *Gorman* v. *Gorman, supra,* is that "where the divorce is granted on the ground of adultery or extreme cruelty, section 146 of the Civil Code leaves the disposition of the community property, in the first instance, to the discretion

of the trial court, with, perhaps, the qualifications, inferred from a reading of the entire section that as a general rule, more than one-half of such property must be decreed to the innocent spouse. (*Eslinger* v. *Eslinger*, 47 Cal. 62; *Brown* v. *Brown*, 60 Cal. 579.)'' In *Nave* v. *Nave, supra,* it is said: ''It thus appears that unless there be some very good reason to the contrary, the general rule is to be followed.'' [5] It is apparent from the figures above set forth that, although the court granted appellant the divorce, it awarded him less than one-half of the community property. The decree in that respect is therefore erroneous. Obvious reasons appear from the record, however, why appellant should not be awarded more than one-half the community property. [6] The fact that the divorce was granted to appellant denies to the respondent the right to obtain alimony for her own support. Consequently she is dependent entirely for her livelihood upon her own resources. Owing to the helpless condition of said daughter, who is now only thirteen years of age, respondent will of necessity be required to devote her exclusive time and service to the care and comfort of said daughter, which will prevent her from accepting any remunerative employment for her own support. Therefore the share of the community property allotted to her by the court must serve as the only source of her sustenance. We therefore believe that under the circumstances she is entitled to a full one-half of said community property.

The remaining question to be considered relates to that portion of the decree which directs appellant to pay certain debts, including the mortgage on the house and the debt for which said oil stock was pledged. Appellant contends that these debts should have been considered in the matter of equalizing the division of the community property. [7] It is doubtless true that the community property which shall be distributed upon a dissolution of the community by divorce is the residue which remains after the discharge of the community obligations. (*Frankel* v. *Boyd*, 106 Cal. 608 [39 Pac. 939]; *Farmers Exch. Nat. Bank* v. *Drew*, 48 Cal. App. 442 [192 Pac. 105].) It does not appear clearly, however, from the judgment-roll before us, whether or not the debts in question, other than the mortgage debt, were incurred for the benefit of the community. Two of those debts consisted

of loans made to appellant for the payment of which, according to the findings of fact, his promissory notes were given. But there is no finding as to whether or not the money received therefrom was used for the benefit of the community. The third debt mentioned in said decree is "on an open account," and likewise as to that debt the findings do not show that the community received the benefit thereof. The conclusions of law, however, state "that plaintiff shall satisfy and discharge all outstanding indebtedness of the community as follows." An enumeration of all of said debts then follows. In the judgment also the court directed appellant to pay "the debts of said community . . . amounting to the sum of $10,471." [8] Before a division of the community property can be made legally, the nature of those debts must be definitely ascertained. If it be determined as a fact that they are community debts, then they should be deducted from the gross value of the community property before a division thereof is made. This situation, in connection with the necessity of providing adequate support for the maintenance and education of the children, makes it impossible for the court, on appeal, to revise the disposition of the community property (sec. 148, Civ. Code), and hence those matters will be left to the discretion of the trial court, subject to the limitation already indicated however, that, under the circumstances, respondent is entitled to a full one-half share of said community property.

For the reasons herein stated said interlocutory decree is reversed as to those portions from which the appeal has been taken.

Tyler, P. J., and St. Sure, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 18, 1924.