[Civ. No. 12803. Second Appellate District, Division Two.—October 18, 1940.]

CHARLES HENRY EARLE REMONDINO, Appellant, v. MARIE K. REMONDINO, Respondent.

Charles B. DeLong and Clarence Harden for Appellant.

Hunter M. Muir for Respondent.

MOORE, P. J.—Plaintiff appeals from a "supplemental" judgment in the sum of $11,300 as the amount "due, owing and unpaid to her [defendant] from the plaintiff for alimony, support and maintenance in accordance with the terms of the final decree of divorce herein . . . to June 1, 1938, . . . and that execution issue out of this court in aid of the collection of said judgment".

Plaintiff and defendant were married June 4, 1912, and separated November 1, 1918. On the following day, they entered into a contract, in the preamble of which they declared that they "now are living separate and apart and expect in the future to live separate and apart and *are desirous of settling their obligations to each other growing out of their marriage relation* and for the purpose of avoiding all litigation and contention, both present and future as regards their marriage obligations . . . and to adjust the same amicably and finally as between themselves". By the covenants of the contract, plaintiff agreed to pay defendant $100 on the first day of every month thereafter *"for the support and maintenance"* of defendant. By other provisions plaintiff obligated himself to pay his wife the sum of $500 six months later and to keep his life insured in the sum of $5,000 in her favor. It was further agreed that in the event either party should institute an action for divorce "this contract and the

provisions hereof shall be confirmed by such court" whereby the court should by its orders and decrees in such action require plaintiff to do and perform all of his obligations as set forth in said contract. In the event of such court action, plaintiff would allow and pay forthwith to defendant upon the commencement of such action the sum of $150 at attorney fees and such additional sums as the court might order him to pay to defendant, together with the sum of $25 and such additional sums thereafter as the court might direct for costs and expenses to enable the wife to prosecute or defend such action. The contract contained mutual releases of the parties upon any property then owned or thereafter to be acquired except as specifically provided in the agreement.

Thereafter, on or about the 19th day of August, 1921, plaintiff instituted his action for divorce in the Superior Court of San Diego County alleging that "wilfully and without cause, defendant deserted and abandoned the plaintiff against his will and without his consent" and attached said contract as an exhibit. In his complaint, plaintiff requested *"that this court should . . . require said plaintiff . . . to comply with and to perform each and all of the terms of said contract to be performed by him in accordance with the terms therein . . . "*

On September 3, 1921, the court awarded the husband an interlocutory decree of divorce which recited the contract and ordered "that said property settlement agreement and each and all of the terms and covenants thereof be, and the same are, by the court, confirmed" and "that said plaintiff . . . be and he is hereby ordered and required and directed to comply with each and all of the terms and covenants thereof". Said decree proceeded then to order the plaintiff to pay $100 per month for and during the term of defendant's natural life and to keep said life insurance in her favor in the sum of $5,000 in force and adjudged that in the event said insurance in said sum shall fail at the time of the death of plaintiff, then defendant shall be entitled to receive from the estate of plaintiff in lieu of such insurance the sum of $5,000. Thereafter on the 8th day of September, 1922, the final decree was entered containing in substance all that was embodied in said interlocutory decree.

Plaintiff ceased making the payments after the expiration of some years following the execution of the contract.

In his brief, he says that on April 3, 1929, after proper notice, he moved said superior court for a modification of said final decree with respect to said monthly payments. It is now claimed that at the hearing of said motion defendant made objection to any alteration of the decree on the ground that the court was without jurisdiction to do so because of the fact that the payments therein provided were fixed by the parties themselves in said contract. The court properly declined to amend the provisions of said final decree with respect to said payments for the reason that it had "neither authority nor jurisdiction to change the decree". (*Ettlinger* v. *Ettlinger,* 3 Cal. (2d) 172 [44 Pac. (2d) 540].)

Plaintiff sets forth in his brief that on October 20, 1931, defendant moved said court for an order requiring plaintiff to show cause why he should not be held in contempt for his refusal to make said monthly payments as provided by said decree. An order was issued, returnable November 9, 1931, to which hearing plaintiff objected on the ground that the judgment was not an ordinary judgment for support and maintenance but that it was based upon the contract of the parties and therefore was not such judgment as would justify contempt proceedings for its enforcement, while defendant contended that the judgment should be classified as a judgment for alimony. After overruling plaintiff's said objection, the court adjourned proceedings to December 14, 1931. In the interim, plaintiff filed his petition in the Supreme Court for a writ of prohibition to prohibit said superior court from hearing said motion. No return to said petition was filed. The petition was disposed of as a default by issuing the peremptory writ.

Thereafter, on the 4th day of August, 1937, plaintiff was adjudged a bankrupt. Defendant filed her claim in the bankruptcy proceeding setting forth that under said final decree there was unpaid "alimony" as of November 29, 1937, amounting to $10,300 and in the schedules of the bankrupt plaintiff listed his liability to defendant as a debt of $10,300 "the amount due under the property settlement contract . . . reduced to and contained in a final decree of divorce".

On January 5, 1938, plaintiff received his discharge. On May 10th defendant, after proper notice, applied to the court for an order for judgment "covering the accrued alimony, support and maintenance moneys due and owing". At the

hearing she presented an affidavit reciting that the amount due her "as and for alimony, support and maintenance" under said agreement and final decree aggregated $11,000. Plaintiff's answer thereto was his discharge in bankruptcy and that by virtue of the discharge he was released from all obligations under said contract and final decree. On June 25, 1938, over objection of plaintiff, the superior court made the order from which this appeal is taken.

Plaintiff now contends as follows: (1) that the provisions for monthly payments contained in the final decree are not a judgment for alimony or support and maintenance but that it is based solely upon the contract between the parties; (2) that defendant is estopped now to assert that the final decree is of the nature of a judgment for support and maintenance for the reason that she had contended at various stages of the litigation that the judgment was based upon the property settlement contract; and (3) *res judicata* in that the issuance of the writ of prohibition by the Supreme Court was a determination that the order for said monthly payments was not for support money.

The contention that the monthly payments of $100 were not "support money" cannot be maintained. That defendant was entitled to be supported by plaintiff was conceded by plaintiff himself when he executed the contract for separate maintenance immediately following the separation. That contract contains no provision that defendant was entitled to money for any reason other than plaintiff's obligation arising from the marital status. They had intermarried more than six years prior to the separation. Upon their marriage they constituted a social unit. Plaintiff's obligation to support defendant arose immediately out of such unity and that obligation was to continue as long as they both should live. By the contract he relieved the court of the task of determining the extent and amount of defendant's support. Having thereby settled that question as between them, there being no children, and their terms having been confirmed by the court, the final decree determined that plaintiff should pay the money specified for the support and maintenance of defendant. This was a final adjudication of plaintiff's obligation to defendant arising out of the marriage and memorialized by their contract.

That the defendant was to have no further claims against plaintiff's earning power or upon his estate at his

death other than those contained in the decree, was a substantial consideration passing to the plaintiff for his promise to make the payments mentioned in the contract. Moreover, not only did plaintiff promise to make the payments to defendant during her natural life but he requested that the court make an order requiring him to perform the terms and provisions of his contract. In view of the foregoing, we find no reason for holding that the order for the monthly payments contained in the final decree was not an order for the payment of support money, and was, therefore, not dischargeable in bankruptcy.

█ The fact that the judgment of divorce is one that may by suit be enforced against plaintiff even in another jurisdiction (*Lynde* v. *Lynde*, 181 U. S. 183 [21 Sup. Ct. 555, 45 L. Ed. 810]) does not affect the nature of the obligation upon which the judgment is based. (*Audubon* v. *Shufeldt*, 181 U. S. 575 [21 Sup. Ct. 735, 45 L. Ed. 1009]) and because the order is based upon the legal obligation of plaintiff to support his wife and because it is "a portion of his current income or earnings" it is held that "the considerations which affect either can be better weighed by the court having jurisdiction over the relation of husband and wife than by a court of a different jurisdiction." █ Since her award of support money is hers of right, it is not barred by a discharge in bankruptcy of her husband. (*Audubon* v. *Shufeldt, supra; Wetmore* v. *Markoe*, 196 U. S. 68 [25 Sup. Ct. 172, 49 L. Ed. 390, 2 Ann. Cas. 265].) This is true even though the parties have agreed upon the amount of support to be paid by the husband and have caused the terms of their contract to be embodied in the divorce decree. █ If, upon a consideration of the entire transaction the court determines that the purpose of the judgment for support money is to guarantee the economic safety of the wife by the husband, then his discharge in bankruptcy does not affect his liability under the judgment. (*In re Ridder*, 79 Fed. (2d) 524 [103 A. L. R. 719].) In the case of *Dunbar* v. *Dunbar*, 190 U. S. 340 [23 Sup. Ct. 757, 47 L. Ed. 1084], the parties entered into separation contract. Divorce proceedings followed but the provisions of their settlement were not incorporated into the divorce decree. The United States Supreme Court held that the parties had merely defined the amount and extent of the husband's liability to support his wife and that the fact of

their having fixed the liability by contract did not alter its essential character and therefore the payments accrued under the contract were not discharged by bankruptcy. Since from the covenants of the parties, it is obvious that their contract was made with reference to and by reason of plaintiff's obligation to support defendant, it is still a valid and subsisting obligation notwithstanding the discharge in bankruptcy. Alimony due or to become due or for the maintenance or support of wife or child remains the obligation of a bankrupt, notwithstanding his discharge. (*In re Ridder, supra;* Bankruptcy Act, sec. 17 (2), 11 U. S. C. A., sec. 35.) In the case of *In re Adams,* 25 Fed. (2d) 640, it was held that the promise by a man to pay his wife an annuity until her death or marriage in full for her support was not released by his discharge in bankruptcy. The agreement of Mr. Remondino to pay his wife $100 monthly is clearly no less for support than was Mr. Ridder's promise to pay his wife an annuity. The law is not swift to discharge an obligation which has been imposed by the law for the peace and security of society.

No question is raised against the proposition that a husband and wife may contract with regard to their properties. It is equally well settled that where monthly payments are to be made for the "support and maintenance" of the wife, such provision constitutes an integral element of their adjustment of their respective obligation and when approved by the court it "becomes immune from subsequent modification". (*Ettlinger* v. *Ettlinger, supra.*) Neither is it any the less a judgment for alimony because the court's order does not so designate it. It is shown to be for that purpose in reciting the language of the contract "for the support and maintenance" of defendant, and in approving the "agreement as to amounts and time of payment. . . . The court was therefore without jurisdiction to thereafter modify its provisions." (*Ibid.*)

The Tropp case, *Tropp* v. *Tropp,* 129 Cal. App. 62 [18 Pac. (2d) 385], cited by plaintiff is not in point. The judgment there considered had been discharged because it was for the sum of $50,000 agreed upon by the parties as settlement of their "property" rights which was approved by the court in the divorce decree. That is quite a different matter from an order fixing a reasonable sum to be paid by the husband

out of his earnings for his wife's support. In that case, the "substantial monthly payment was provided in the Agreement" for the wife's support and was not discharged. This fact established that the $50,000 was a "debt" of a widely different nature from that to support his wife and it was clearly dischargeable in bankruptcy.

Plaintiff suggests that he obtained the decree by reason of the "fault" of his wife. He cites a number of authorities to the effect that it is beyond the power of the court to compel the payment of alimony to the guilty spouse. (*Lampson* v. *Lampson*, 171 Cal. 332 [153 Pac. 238] ; *Hogarty* v. *Hogarty*, 188 Cal. 625 [206 Pac. 79] ; *McKannay* v. *McKannay*, 68 Cal. App. 701 [230 Pac. 214] ; *In re McKenna*, 116 Cal. App. 232 [2 Pac. (2d) 429] ; *Marrs* v. *Superior Court*, 137 Cal. App. 579 [30 Pac. (2d) 1030] ; *In re Nielsen*, 19 Cal. App. (2d) 305 [65 Pac. (2d) 360] ; *Johnson* v. *Superior Court*, 128 Cal. App. 584 [17 Pac. (2d) 1055] ; *Gaudio* v. *Gaudio*, 138 Cal. App. 289 [32 Pac. (2d) 156] ; *Harwell* v. *Harwell*, 26 Cal. App. (2d) 143 [78 Pac. (2d) 1167] ; *Johnson* v. *Johnson*, 104 Cal. App. 283 [285 Pac. 902].) It is conceded that where the wife is guilty of immoral or unsocial conduct, or where she refuses without reason to conform to the place or mode of living selected by the husband, in granting a divorce to the husband, there is no authority in the law for such an order. (Civ. Code, secs. 136, 139.) By the divorce she is completely cut off from any economic advantage as against her former spouse. But, in the case at bar, there is no evidence in the contract that the defendant was guilty of any of the inhibited acts. On the contrary, the contract practically conceded that the separation might have been due to plaintiff's own fault, as is evidenced by his promise to maintain insurance on his life for her benefit, to pay her $500 within six months and to pay her $100 per month as long as she lives. Moreover, plaintiff contemplated that defendant would institute divorce proceedings. He promised to pay all costs of litigation to be instituted by his wife for the purpose of obtaining a divorce.

The contract indicates that there was no property, community, commingled or otherwise, which might explain the promise of plaintiff to make the monthly payments. The modest sums which are provided by the contract and which are the basis of the "supplemental" judgment could have

been intended for no purpose other than defendant's "support". But even if she had been at fault, the decree specifically provides *for her support and maintenance* by plaintiff. It was clearly then within the jurisdiction of the court to confirm the contract upon plaintiff's request.

 Defendant is not estopped to contend that the judgment for money in the final decree is for her support and maintenance. By filing her judgment as a claim in the bankruptcy proceedings, plaintiff was not acting inconsistently with her present claim. The order of the court could be complied with only by the payment of money and was enforceable only in the event plaintiff had money or other valuable property. In distributing the assets of the bankrupt estate there is no reason why plaintiff's obligation to his wife should not have been treated as fairly as any other obligation owed by him. If the parties had never been separated she might have withheld from the trustee a home and all of those chattels that are exempted for the benefit of a man's family. (Civ. Code, sec. 690; 4th Remington, 3d ed., 739; 7th Remington, 5th ed., 825.)

In presenting a claim she made no pretenses that the superior court had not ordered plaintiff to make payments as he had consented should be done. Furthermore, by filing such claim, plaintiff suffered no prejudice. Her act indicated a desire on her part to cooperate with plaintiff as she had done with rare patience in allowing him to become in arrears to an amount in excess of $10,000. If we reckon the merits of the parties upon the basis of a "change of front" we might observe that the only radical departure from a position formerly taken is that of plaintiff. When he applied to the superior court for a reduction of the amounts of his monthly payments, he thereby acknowledged the judgment to be for the support of his wife and that he was subject to the order of the court in the performance of such obligations imposed by the judgment. That order to support his wife was made necessary by the nature of his obligation to support her, which in turn was the basis of the provisions of the Civil Code. (Secs. 136, 137, 137.5, 159.) These statutes were legislative authority for the court's confirming the contract, ordering its performance and thereafter enforcing it.

 The third point presented by plaintiff, although he terms it estoppel, is in fact a plea of *res judicata* or that the

order of the Supreme Court in granting a writ of prohibition against the superior court determined "the law of the case". That writ was issued upon the application of plaintiff at a time when defendant was seeking to enforce her judgment by contempt proceedings. It was brought by plaintiff not against defendant but against the superior court. For reasons not appearing, no answer was filed to plaintiff's petition for said writ. It thus appears that said petition for a writ of prohibition was decided as a default. No pleading presented the claims of defendant. Hence, plaintiff's verified petition, we must assume, on its face stated ground for the issuance of the writ. ██ In order for a decision of an appellate court to be *res judicata,* it must be final and the action must have been between the same parties as those who appeared in the trial court. (50 C. J. 712.) It is not suggested that the superior court and defendant are in effect identical or that they are in privity. ██ In order for such decision to become the law of the case, it must have been a decision on appeal upon the identical issues tried before the court below. Had the merits of defendant's cause been pleaded, it is not unlikely that a different result would have followed the hearing. In his petition to the Supreme Court plaintiff failed to allege that the final decree followed the contract and provided for "the support and maintenance" of defendant.

The "judgment" is affirmed.

Wood, J., and McComb, J., concurred.

Subsequent to the filing of the above opinion, the court made the following order:

THE COURT.—Stipulation having been filed on the 9th day of August, 1940, that the above-entitled action might be submitted on the briefs, and it appearing that respondent departed this life on the 7th day of October, 1940, prior to the submission and decision herein,

It is ordered that the submission of said cause and the filing of the opinion be dated *nunc pro tunc* as of October 5, 1940. (*Estate of Randall,* 194 Cal. 725, 733 [230 Pac. 445].)