[Civ. No. 30233. Second Dist., Div. Two. Mar. 21, 1967.]

FRANKLIN LIFE INSURANCE CO., Plaintiff, v. LOR-
AYNE M. KITCHENS, Defendant, Cross-defendant and
Respondent; MAUREEN L. KITCHENS, a Minor, etc.,
et al., Defendants, Cross-complainants and Appellants.

Wilton W. Webster for Defendants, Cross-complainants and Appellants.

John M. Coleman for Defendant, Cross-defendant and Respondent.

FLEMING, J.—Interpleader by Franklin Life to resolve contesting claims to life insurance proceeds. On one side, the insured's divorced wife, Lorayne M. Kitchens, the named beneficiary under the policy; on the other, the guardian of the insured's three minor children, Maureen, Thomas, and Susan Kitchens.

The children claim on the basis of their parents' divorce decree, which in disposing of community property awarded life insurance to the husband as his separate property, ''provided he shall at all times, until the youngest child of the parties shall attain majority, maintain the said children, jointly, as the beneficiaries of all such policies in effect.'' The husband failed to designate the children as beneficiaries of the Franklin Life policy, and at the time of his death his divorced wife remained the named beneficiary under the policy.

The trial court ruled in favor of Mrs. Kitchens, reasoning that since the parties to the contested divorce had not voluntarily agreed to change beneficiaries, the court in the divorce action had been without jurisdiction to order it. Her demur-

rer to the pleadings of the children was sustained, and their claim to the proceeds dismissed.

This relatively simple case contains the strands of several knotty and complex problems.

## 1. *No Property Agreement Is Involved*

■ To support their claim to the insurance proceeds the children rely principally on a theory of contract, contending that the husband and wife had in substance made a voluntary agreement to designate the children as beneficiaries of their insurance, an agreement enforceable by its third-party beneficiaries under usual contract rules. This agreement was reached, they argue, when the attorney for the husband in the contested divorce submitted proposed findings of fact designating the children as insurance beneficiaries, proposals which were similar to those previously submitted by the attorney for the wife. They argue that the submission of parallel findings on the disposition of particular community property, findings later adopted by the court, was equivalent to an agreement between spouses on that subject. To support their contention they cite *Chilwell* v. *Chilwell,* 40 Cal.App.2d 550 [105 P.2d 122] ; *Mutual Life Ins. Co.* v. *Franck,* 9 Cal. App.2d 528 [50 P.2d 480] ; *Mutual Life Ins. Co.* v. *Henes,* 8 Cal.App.2d 306 [47 P.2d 513] ; and *Gould* v. *Superior Court,* 47 Cal.App. 197 [191 P. 56].

We do not find these cases determinative of the present problem. In each of them it was clear that a settlement disposing of all community property had been arrived at by the parties, either by formal written agreement or by agreed stipulation in open court. Such was not the case here, where the divorce decree was the end-product of a contested action. Submission by the parties of proposed findings of fact and conclusions of law suggesting the disposition of the community property, either at the specific direction of the court or on the parties' own initiative in the hope their proposals will be adopted, does not turn a contested case resolved by decision of the court into an agreed case settled by consent of the parties. Even when proposed findings on a particular subject parallel those submitted by the adverse party, in the absence of some showing of a belated compact between the parties settling all terms and conditions of their affairs the essential element of a free accord remains lacking. In *Farley* v. *Farley,* 227 Cal.App.2d 1, 9 [38 Cal.Rptr. 357], the court rejected a contention similar to that made here, saying of the party

sought to be bound, "True, he did request the Utah court to substitute the north half of the property for the south half originally awarded. That act does not signify voluntary submission to the property disposition. It signifies only that defendant may have been constrained by necessity to make the best of a bad situation without acceding to the situation itself." Here, the division of property at the conclusion of the divorce trial, even though it followed the proffered suggestions of the parties in some respects, was an involuntary division of property by court order and not the result of a voluntary settlement made by the parties themselves. (*McLaughlin* v. *McLaughlin,* 159 Cal.App.2d 287, 291 [323 P.2d 820].)

2. *A Divorce Court May Order the Designation of Minor Children as Beneficiaries of Community Life Insurance*

The court below concluded that a judgment ordering a spouse to designate minor children as beneficiaries of community life insurance exceeded the jurisdiction of the divorce court and was therefore void. The argument that in the absence of a property settlement such a judgment is necessarily unenforceable appears based on two somewhat unrelated propositions concerning the court's authority in a divorce action: (1) the court's power to dispose of community property is limited to a simple division of property between spouses, and (2) its authority to compel child support is restricted to the designation of periodic monetary allowances. (Civ. Code, § 139.)

We discuss each of these propositions.

The first, that the court in a divorce action is limited to a simple division of community property between spouses, derives from *Simpson* v. *Simpson,* 80 Cal. 237 [22 P. 167], a case in which an award of the homestead to the wife in trust for her support and the support of seven minor children was adjudged an outright award of community property to the wife against the husband's later claim to a reversionary interest in the homestead. There had been no clear intent in the judgment of divorce to create a trust, said the court, and the paragraph in the judgment which mentioned support was only an expression of the motive for giving the homestead to the wife and not a limitation on its absolute assignment under an earlier paragraph of the decree. Although the court thereby found the trust invalid for uncertainty of intent, it went on to discuss what it called another consideration tend-

ing to support its construction—that the law did not authorize the divorce court to assign the homestead to the wife in trust for any purpose and the divorce court must have intended to act within its authority. Furthermore, said the reviewing court, in the absence of statute courts have no common law authority to create any kind of trusts, certainly not express trusts. And finally, the court pointed out, no trustee had been designated under the decree, for it would have been a legal impossibility for the wife to have acted as trustee for herself. But having made these broad pronouncements, the court then returned to its original ground of decision, its construction of the decree as an absolute award of the property in fee to the wife, and concluded its opinion by declaring it unnecessary to decide what would have been the effect of a final decree which had clearly assigned the homestead to the wife in trust. On reading *Simpson* today, we deduce that the court was strongly inclined against taking part of the homestead from the children to give it to a husband who had been divorced for two years' habitual drunkenness and that as a precaution against an undesirable result the court had set forth every reason it could think of, both practical and theoretical, why the former husband was not entitled to an interest in the homestead.

But as often happens. the dictum used in *Simpson* to fortify a disposition of property to serve family purposes was later applied mechanically by another court to defeat an award for family support, and in *McKannay* v. *McKannay*, 68 Cal.App. 701, 705 [230 P. 214], we find the flat declaration that a divorce court cannot award community property to a spouse in trust for the benefit of the children. In that case the court found that a decree awarding the use of the family home and furniture to the wife in trust for the benefit of the two minor children, one of whom was a permanent invalid, created a trust which was beyond the power of the court to create, and, accordingly, the court reversed a judgment which allowed the invalid daughter, the son, and the wife to continue to occupy the family home. The clear implication of the *McKannay* ruling is that the divorce court can only divide the community property between the parties and cannot set up terms and conditions governing its use.

Yet Civil Code, section 146, the basic statute which authorizes the division of community property in a divorce action, provides no direct support for the holding in *McKannay*, but on the contrary, at least with respect to the homestead, specifi-

cally authorizes its assignment to the prevailing party for an absolute or a limited period of time. The statute contains no specific prohibition against the assignment to a party of a community property estate for years, an estate for the life of the assignee, an estate for the life of a third party, or an estate for the minority of a third party. In view of the absence of any statutory prohibition against the assignment to a party of limited interests in community property, we take the view that the holding in *McKannay* proscribing trusts in community property, is open to further examination.

The rule announced in *McKannay* favors a simple immediate division of community property between spouses. While it is undoubtedly true in the great majority of cases that the simplest rules provide the soundest solutions to problems arising from the severance of the matrimonial relationship, nevertheless in these days of fragmented property interests and of complex custodial arrangements for children the simplest rules may not always furnish the most desirable solutions. Rules which served their purposes well on the dissolution of the marital community in *Simpson's* day in 1889 may be inadequate today to properly dispose of such property rights as choses in action, intangible interests, contract claims, deferred compensation, accrued pensions, annuities to take effect in the future, social security and veterans' benefits, and, the subject of our concern here, insurance benefits. If the authority of the court in a divorce action was ever restricted to an immediate simple division of community property between the parties, as *McKannay* suggests, we think such a restriction no longer reflects current law and has been rendered obsolete by the development of complex procedures for the deferred disposition of intricate community property interests. Flexibility of method and timing in the disposition of community property is now accepted as a matter of routine. (*McClenny* v. *Superior Court,* 62 Cal.2d 140 [41 Cal. Rptr. 460, 396 P.2d 916]; *Stevenson* v. *Superior Court,* 62 Cal.2d 150 [41 Cal.Rptr. 466, 396 P.2d 922].) ▇ We think it implicit from these cases that the authority of the divorce court over community property is no longer limited to a simple division of the community property between the parties.

The second proposition, that the authority of the court in a divorce action to order child support is limited to an allowance in money and does not include the power to allocate specific property to assure support, was articulated in *Miller*

v. *Miller*, 52 Cal.App.2d 443 [126 P.2d 357], a case in which appellant-husband successfully appealed an interlocutory decree of divorce which had ordered him to keep in effect a life insurance policy in favor of his child. The appellate court, citing *McKannay* v. *McKannay, supra,* concluded that the power of the divorce court to provide for the support of the child was limited to an allowance in money and could not be extended to provide protection by means of insurance against the death of the obligor. A married parent is under no obligation to protect his child by providing insurance on his life in favor of his child, declared the court, and it could hardly be contended that a divorced parent falls under a greater obligation towards his child than a married one. Additionally, the court found the decree defective because its provision for insurance was not specifically limited to the period of the child's minority.

Respondent-wife in *Miller* attempted to sustain the validity of the provision for insurance as one for reasonable security for child support under Civil Code, section 140. The court, however, took the view that section 140 was designed to secure payment of the suitable allowances for maintenance called for by section 139 in the same way that a mortgage secures periodic payments under a promissory note, and that the liability for suitable allowances for child support under section 139 was limited to periodic payments of money and did not comprehend the maintenance of insurance in favor of a child.

We do not find the opinion of the *Miller* case fully persuasive today on the general propositions it purports to state. In 1951, Civil Code section 139 was amended by the legislature to expand the liability of a parent for child support. At the time *Miller* was decided, section 139 merely authorized a court to compel the husband to provide for the "maintenance" of the children of the marriage. Under the 1951 amendment liability for support under section 139 was extended to cover both spouses, and its scope broadened from an obligation limited to "maintenance" of the children to one which now includes "support, maintenance, and education" of the children. At the same time section 140 was modified to read: "The court may require any person required to make any payments under the provisions of this article to give reasonable security therefor and may enforce the same by the appointment of a receiver, or by any other remedy applicable to the case." ■ Clearly, the Legisla-

ture in response to modern needs has extended the parents' liability for child support to broader territory, territory which now includes an obligation to educate children to take their place in adult society. In devising practical means to carry out these expanded obligations of support imposed by the legislature, the courts, in California and elsewhere, have been impelled to the use of new techniques to insure the support, maintenance, and education of the children. (3 A.L.R.3d 1170, 1178-1181; *Farley* v. *Farley*, 227 Cal.App.2d 1, 7 [38 Cal.Rptr. 357]; *Guggenheimer* v. *Guggenheimer*, 99 N.H. 399 [112 A.2d 61] (1955); *Wallace* v. *Wallace*, 371 S.W.2d 918 (Texas 1963).) Among these new techniques are compulsory designation of minor children as beneficiaries of insurance.

The persistent surfacing of provisions in matrimonial decrees designating minor children as beneficiaries of life insurance suggests to us that such provisions serve a useful purpose and satisfy a legitimate need in modern society. Children of divorced parents, often excessively vulnerable to an uncertain future, may need greater protection from the law than children of a united household. On separation or divorce, normally both spouses wish to assure their minor children's future—insofar as it is possible to do so without undue sacrifice of present enjoyments. Insurance provides a relatively painless manner to achieve this objective, particularly when community property insurance on the life of a parent exists. In such circumstances need there be any insurmountable objection to the enforcement of a decree compelling the maintenance of insurance for the benefit of minor children? As a general proposition, we think not.

Turning to the order in this case, it appears to have been an appropriate means to secure fulfillment of the obligation of the parent to provide the support, maintenance, and education for his children required by Civil Code, section 139. Under the divorce decree the insured was obligated to pay $75 a month for the support of each of the three minor children, a total of $225 per month. Apart from his business as a plumbing contractor the insured apparently had no substantial accumulation of property. At the time of the divorce Maureen was 12 years old, Thomas was 10, and Susan was 8. The obligation for child support is a continuing one which survives the death of the obligor and extends to his estate. (*Newman* v. *Burwell*, 216 Cal. 608 [15 P.2d 511].) It is a reasonable inference that the trial court was attempting to assure future payments of child support in a

case where it thought such assurance might well become necessary—as indeed it did. We think the court used appropriate means authorized by Civil Code, section 140, to enforce the parent's obligation to provide reasonable security for the support of his children. (*Taylor* v. *George*, 34 Cal.2d 552, 556 [212 P.2d 505].)

Returning again to the *Miller* case, its opinion suggested a further invalidity in the decree under review in that the period of required insurance could have extended beyond the child's minority to a time when the child was no longer legally entitled to support. The same criticism of the decree could be made in the present case, since the order compelling the designation of beneficiaries would remain in effect until the youngest of three children reached majority and could include a period when the elder children had come of age and were no longer entitled to support. We reject such an objection for two reasons: (1) if the decree were too broad, the remedy for its invalidity lay in an appeal from the decree, the remedy used in the *Miller* case but not here; (2) in actual fact at the time of the insured's death all the children were still in their minority, and the fact that the order might have become ineffective under certain conditions should not nullify its application to events falling within its legitimate sphere.

3. *What Remedies Are Available to the Beneficiaries Against Whom?*

Assuming the propriety of an order requiring the designation of minor children as beneficiaries of community property life insurance, we still face the mechanics of its enforcement—who may enforce, what remedies are available against what property, on whom is it binding?

▪ Who may enforce? Clearly, the parties to the original divorce decree could enforce the decree by contempt, by specific performance, or by other suitable relief. Likewise, the beneficiaries of the order can seek to enforce it. A child may apply to court to enforce a support order directed against its parent. (Civ. Code, §§ 137.1, 203.) ▪ Since we have concluded that an order requiring the designation of minor children as beneficiaries of insurance may serve as security for child support, the children themselves would be able to enforce its provisions directly against their parent. (37 Cal. Jur.2d, Parent and Child, § 25.) ▪ Under this reasoning children could sue a parent's estate for damages for the latter's failure to comply with a designation-of-beneficiary order, in the same manner they could sue the estate for a fail-

ure to carry out similar provisions of a property settlement agreement incorporated in a divorce decree. (*Mutual Life Ins. Co. v. Henes*, 8 Cal.App.2d 306 [47 P.2d 513]; *Waxman v. Citizens National Bank*, 123 Cal.App.2d 145 [266 P.2d 48].) In both instances the basis for the suit is the neglect of the parent to perform a duty placed on him by the court.

What remedies against what property? The children in their cross-complaint claim a direct ownership in the insurance proceeds by virtue of the designation-of-beneficiary order in the divorce decree. In so doing they go beyond a personal claim against their parent for his failure to perform a personal duty and seek to establish a direct interest in specific property. Is this claim justified? In order to sustain a direct interest in the proceeds themselves, the children must hurdle problems of jurisdiction as well as inferences from the test of the order itself.

On jurisdiction: without question the divorce court had personal jurisdiction over both spouses and could order them to perform any acts relevant to the disposition of the community property or the support of the family. The court also had personal jurisdiction to determine the community property of the marriage and allocate it between spouses, a determination and allocation fully binding on the parties themselves. However, when in a divorce we pass from unquestioned jurisdiction over the person of a spouse to jurisdiction over that person's property, we enter the haze and fog of uncertainty, both of jurisdiction and of its exercise. Normally, for a court to exercise dominion over property it must take it into its possession. Only after the court has seized possession does its power become directly effective on the property itself. While the seizure of intangible property is a matter of some difficulty, a remedy for this difficulty has been provided in divorce proceedings by the Civil Code provision for the appointment of a receiver. (Civ. Code, § 140.) If in the present case the court had taken actual or constructive possession of the policy through the appointment of a receiver, then it could have taken effective steps to dispose of the policy on terms and conditions and create a specific lien on the policy and its proceeds as security for the payment of child support. (Civ. Code, § 140; *Willen v. Willen*, 121 Cal.App. 351, 353 [8 P.2d 942]; *Baylis v. Baylis*, 48 Cal.App.2d 674, 676 [120 P.2d 89].) But a receiver was not appointed, the policy was not taken into the possession of the court, either actually or constructively, and it appears doubtful to us that a personal

order of the divorce court could create a direct interest in the insurance proceeds in favor of third parties which would be binding on other third parties. An authoritative disposition by the divorce court of future insurance proceeds would be at the expense of the rights of all other parties, both those whose interests arose before and those whose interests arose after the entry of the divorce decree. Other children, other wives, other relatives, creditors, pledgees, assignees, all have potential claims against the proceeds which might conflict with the decree of the divorce court. If, in the absence of a specific order of the divorce court taking possession of specific property and charging it with a specific lien, we should attempt to impose an equitable lien against particular property, we would find ourselves hard-pressed to formulate a general rule which could operate satisfactorily in relation to the rights of third parties. In a number of cases our courts have wrestled with claims of general equitable liens against specific property, and the best formulation of law they have been able to produce defines the issue as the determination of the stronger and better equities in each case. (*Shoudy* v. *Shoudy*, 55 Cal. App. 344, 352 [203 P. 433].) An illustration of the difficulties is found in *Mutual Life Ins. Co.* v. *Franck*, 9 Cal.App.2d 528 [50 P.2d 480], a case in which the husband on divorce agreed to maintain his first wife as the beneficiary of two insurance policies on his life. The husband remarried, his second wife paid part of the premiums on the insurance, and the husband made his second wife the beneficiary of both policies. The subsequent litigation on the death of the insured resulted in a standoff—the first wife getting the proceeds of one policy, and the second wife the proceeds of the other. To compound the confusion the first wife obtained the proceeds of the particular policy whose premiums the second wife had paid.

On inferences arising from the form of the order: the insurance provision in the divorce decree was couched in purely general terms which failed to identify the policies of insurance with which it dealt, the companies who were the insurers, the face amounts of the policies, the value of the policies, the amounts of the premiums, or the names of existing beneficiaries. On reading the order itself it seems fairly certain that the divorce court did not attempt to go beyond the entry of a personal order directing the husband to take certain action. The order did not purport to grant the children any interest in the property itself, but merely charged the husband with an obligation to perform a specific act, an act

whose enforcement would necessitate further action by the court. In that respect the jurisdiction exercised by the court over the husband appears to have been purely personal, and the remarks of this court in *Tischhauser* v. *Tischhauser*, 142 Cal.App.2d 252, 255 [298 P.2d 551], are pertinent: " 'Such a decree does not operate directly upon the property nor affect the title. The decree is made effectual through the coercion of the parties by directing some action on their part. . . . If the court has the power to order a party to convey land outside the state, it follows that upon his failure to do so the court has the power to enforce its order by directing the clerk to execute the conveyance.' (*Chamberlain* v. *Wakefield*, 95 Cal. App.2d 280, 292 [213 P.2d 62].) . . . .

"The judgment herein purports to make an immediate disposition of the Oregon properties, but it also provides 'that each of the parties hereto upon request shall execute, acknowledge and deliver to the other his or her heirs, assigns or other representatives any and all deeds, releases, bills of sale or instruments which now or hereafter be necessary to carry out and execute the provisions of this judgment.'

"This language, read in the light of the other provisions of the judgment, was sufficient to require respondent to execute a deed conveying to appellant the Oregon ranch as her separate property."

In view of the general terms of the order in the divorce decree, we are not prepared to recognize a direct interest in the insurance proceeds in the children.

4. *The Wife Is Bound By the Divorce Decree*

 However, in this case it is not essential to a recovery on behalf of the children for us to hold that such general orders create liens against specific property and bind nonparties to their proceedings. Mrs. Kitchens, the beneficiary under the policy, was a party to the divorce action from whose decree the rights of the minor children derived. As a party, she had knowledge and notice of the terms of the decree, and an opportunity to protest or appeal its provisions had she desired. She, too, was, and is, under a continuing duty to support, maintain, and educate her minor children, a duty binding on her and her estate. (Civ. Code, §§ 196, 205, 243.) While a divorce decree does not encompass an in rem disposition of property against the entire world, it does involve a disposition of community property between spouses, which disposition is fully binding on them as an inci-

dent to the dissolution of the marriage relationship. (*Mc-Clenny* v. *Superior Court*, 62 Cal.2d 140, 148 [41 Cal.Rptr. 460, 396 P.2d 916].) We conclude that the provisions of the divorce decree remain binding on Mrs. Kitchens until modified or revoked in some appropriate fashion. We think, too, that customary principles of collateral estoppel and res adjudicata operate to bar Mrs. Kitchens from seeking to nullify a disposition of community property which she herself had initiated and which had become an integral part of a final decree which neither party had appealed. (*Estate of Williams*, 36 Cal.2d 289, 292 [223 P.2d 248, 22 A.L.R.2d 716]; *Hughes* v. *Bank of America*, 78 Cal.App.2d 631, 636-637 [178 P.2d 533].) The principles apply even in litigation between her and third parties. (*Hughes* v. *Bank of America, supra*.) Accordingly, by virtue of the decree we deem Mrs. Kitchens a constructive trustee of the insurance proceeds for the benefit of her children, an involuntary trustee who falls under an equitable duty to assign the proceeds to the children in order to effectuate the terms of the decree to which she was a party. (Civ. Code, § 2224; *Day* v. *Greene*, 59 Cal.2d 404 [29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802].) The children may enforce this involuntary trust in the present suit.

To summarize: (1) compulsory designation of minor children as beneficiaries of a community property insurance policy may be an appropriate exercise of the power of the court under Civil Code, section 140, to provide security for the support, maintenance, and education of minor children required by Civil Code, section 139; (2) such orders are not restricted to those arising from voluntary agreement of the parties but may be imposed upon the parties by the court; (3) while such orders may or may not be binding on third parties and may or may not attach to specific property, they are fully binding on the parties to the divorce itself, and may be enforced against them by its beneficiaries.

The judgment of dismissal is reversed. In reversing we do not foreclose further pleadings by the parties or a showing by the divorced wife that the provisions of the divorce decree had been subsequently modified or revoked.

Roth, P. J., and Herndon, J., concurred.