38 Cal.Rptr. 3571

[Civ. No. 10599. Third Dist. Apr. 29, 1964.]

BARBARA ANN FARLEY, Plaintiff and Appellant, v. ROSS E. FARLEY et al., Defendants and Respondents.

ROSS EDWARD FARLEY, Plaintiff and Respondent, v. BARBARA ANN FARLEY et al., Defendants and Appellants.

(Consolidated Cases.)

(1)

Elmer P. Delany and Charles W. Decker for Plaintiff and Appellant and Defendants and Appellants.

Rowland & Paras, Rowland, Paras & Clowdus, Darrel E. Pierce and Gloyd T. Clowdus for Plaintiff and Respondent and Defendants and Respondents.

FRIEDMAN, J.—Plaintiff is the former wife of defendant. She brings this action to establish a Utah divorce decree as a California judgment. The trial court entered a judgment confirming all except paragraphs 7 and 8 of the Utah decree. Plaintiff appeals, contending that the California courts must give full faith and credit to these two particular paragraphs as well as the remainder of the decree.

The facts are not disputed. Plaintiff and defendant were married in Reno, Nevada, in 1947. At the time of marriage the husband owned as his separate property a 41-acre parcel of land located in Sacramento County. After brief sojourns in California and Texas, they became residents of Salt Lake City, Utah, in 1949. There they purchased a home and the husband engaged in business. One child was born in 1948, another in 1949.

In 1958 Mrs. Farley filed a divorce action in the District Court, Salt Lake County, which is a court of general jurisdiction in Utah. Mr. Farley contested her action and the case went to trial, both parties being represented by counsel. During the course of the proceedings Mrs. Farley testified that she intended to move to California with the children after the decree was entered. In October 1958 the Utah court entered findings and a decree awarding Mrs. Farley a divorce, granting her custody and control of the two minor children, and directing the husband to pay $100 per month for the support of each child and $175 per month as alimony. Mr. Farley's business assets were awarded to him. Paragraph 7 of the decree ordered the husband to execute all documents to convey to the wife, as trustee, the south half of the 41-acre tract in Sacramento County. Paragraph 8 of the decree declared: "That the conditions of the aforesaid trust are and the plaintiff be and she hereby is declared to have received said property for the education and further support of the said minor children of the parties, and she shall convey the corpus of the trust estate and all accumulations and additions thereto in equal shares to said minor children, or to the survivor of them, when the youngest attains or would have attained the age of eighteen years, and plaintiff shall have the usual and ordinary power of a trustee in the premises, subject to the approval and further direction of this Court, and shall have the right to sell, mortgage, invest and reinvest the trust estate under such direction and approval."

The husband did not appeal from the Utah judgment. In December 1958, at the request of the husband, the court modified the decree by making the trust provisions applicable to the north half of the Sacramento County property instead of the south half. Plaintiff left Utah in December 1958 and returned to California with her children. Mr. Farley refused to execute a conveyance of half the 41-acre tract, as ordered by the Utah decree, and did not account to plaintiff for any income of the property. In 1959 she instituted Utah contempt proceedings because of his failure to convey the Sacramento County real estate. Pending these proceedings, defendant sold his Salt Lake City business and moved to Sacramento County in May 1959. He failed to make support and alimony payments regularly, and substantial arrearages accumulated. When plaintiff brought the present suit seeking establishment of the Utah decree, defendant filed a separate action to quiet title to the 41-acre tract as his sole property.

The two actions were consolidated for trial. The trial court concluded that the provisions of the Utah decree awarding California real estate were subject to collateral attack in Utah, hence not enforceable in California. Thus it excluded these provisions from its decree and quieted defendant's title to the north half of the 41-acre tract but imposed a lien upon it as security for the payment of alimony and child support. Plaintiff wife appeals not only from the decree entered in the trial court, but also from the adverse judgment in the quiet title action.

Plaintiff relies primarily upon *Sherrer* v. *Sherrer*, 334 U.S. 343 [68 S.Ct. 1087, 1097, 92 L.Ed. 1429, 1 A.L.R.2d 1355], and *Heuer* v. *Heuer*, 33 Cal.2d 268 [201 P.2d 385]. These cases announce that the full faith and credit clause of the federal Constitution (art. IV, § 1) bars a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister state, where the defendant has participated in the divorce proceedings, has had full opportunity to contest the jurisdictional issues, and where the decree is not vulnerable to collateral attack in the courts of the state which rendered it. (*Sherrer* v. *Sherrer, supra,* 334 U.S. at pp. 351-352 [68 S.Ct. 1087, 1097, 92 L.Ed. at p. 1436, 1 A.L.R.2d at p. 1362]; *Heuer* v. *Heuer, supra,* 33 Cal.2d at p. 271.)

The *Sherrer-Heuer* rule deals with attacks on "jurisdiction" in the fundamental sense, as an exercise of judicial power over the subject matter of the litigation and the persons of the litigants. It has particular application to interstate recognition of divorce decrees based upon temporary (sometimes simulated) residence or divided domicile. (See *Barber* v. *Barber,* 51 Cal.2d 244 [331 P.2d 628]; *Aldabe* v. *Aldabe,* 209 Cal.App.2d 453 [26 Cal.Rptr. 208].) ▮ In the present case both husband and wife were bona fide residents of Utah and both fully participated in the Utah action. Thus the courts of that state had fundamental jurisdiction over the parties' marital status and their persons. (*Sherrer* v. *Sherrer, supra,* 334 U.S. at pp. 350-351 [68 S.Ct. 1087, 1097, 92 L.Ed.2d at pp. 1435-1436, 1 A.L.R.2d at p. 1361]; *Williams* v. *North Carolina,* 325 U.S. 226, 229-230 [65 S.Ct. 1092, 89 L.Ed. 1577, 1581-1582, 157 A.L.R. 1366, 1369-1370]; *Crouch* v. *Crouch,* 28 Cal.2d 243, 249-250 [169 P.2d 897]; Rest., Conflict of Laws, § 110; Rest., Judgments, §§ 16, 33.) The husband cannot now question Utah's jurisdiction as a fundamental exercise of judicial power over the subject

matter and parties. Rather, he now makes a collateral attack on the Utah court's "jurisdiction" in the limited sense of the term, asserting lack of power to give the particular relief it did. (*Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280, 289-291 [109 P.2d 942, 132 A.L.R. 715].) Theoretically at least, the *Sherrer-Heuer* doctrine is only of oblique interest here.

Full faith and credit demands only that the Utah decree receive as much recognition in California as it would in Utah. (*Halvey* v. *Halvey*, 330 U.S. 610, 614-615 [67 S.Ct. 903, 91 L.Ed. 1133]; *Herczog* v. *Herczog*, 186 Cal.App.2d 318, 324 [9 Cal.Rptr. 5]; *Gilmer* v. *Spitalny*, 84 Cal.App.2d 39, 44-45 [189 P.2d 744].) California will give res judicata effect to the decree of a court of another state which, with the parties before it, directs a conveyance of California real estate. (*Rozan* v. *Rozan*, 49 Cal.2d 322, 330-331 [317 P.2d 11]; *Riggs* v. *Riggs*, 223 Cal.App.2d 594, 602 [35 Cal.Rptr. 793]; cf. *Worthley* v. *Worthley*, 44 Cal.2d 465, 468 [283 P.2d 19].) Thus the portion of the Utah decree covering the Sacramento County property is entitled to full faith and credit in California if it is valid in Utah; if void for lack of jurisdiction and subject to collateral attack in Utah, it is not binding here. (*Barber* v. *Barber, supra*, 51 Cal.2d at p. 247.) Its vulnerability to collateral attack in Utah is controlled by Utah law. (*Gagnon Co., Inc.* v. *Nevada Desert Inn*, 45 Cal.2d 448, 453-454 [289 P.2d 466].)

Utah is not a community property state. In dividing assets between a divorcing husband and wife, Utah courts may award property acquired before coverture. (*Pinion* v. *Pinion*, 92 Utah 255 [67 P.2d 265, 267].) Section 30-3-5, Utah Code Annotated, 1953, empowers a divorce court to "make such orders in relation to the children, property and parties, and the maintenance of the parties and children, as may be equitable." Utah statutes characterize this statute as broad and comprehensive, authorizing such decrees as the circumstances may warrant, including provisions for the support of children during their minority. (*Murphy* v. *Moyle*, 17 Utah 113 [53 P. 1010, 1012, 70 Am.St.Rep. 767, 770-771]; see also *Callister* v. *Callister*, 1 Utah 2d 34 [261 P.2d 944].) The *Murphy* decision specifically upholds a decree directing sale of the husband's land and deposit of the proceeds with the court clerk with directions to pay the wife a fixed monthly sum for support of the minor children. In order to insure payment of future alimony (and inferentially to secure support of minor children), a husband may be enjoined from disposing of his

property. (*Anderson* v. *Anderson,* 54 Utah 309 [181 P. 168].)

As we construe paragraph 8 of the Utah decree, it is designed in part to make the Sacramento real estate, its proceeds and its income, available during the minority of the two Farley children to finance their education, to meet support needs in addition to the monthly payments of $200, and to serve as security for payment of the $200 monthly allowance if defendant fails to pay. The Utah court also seems to have intended that, in the event of a court-permitted sale, use of either corpus or income for these purposes would be permitted, provided that Mrs. Farley, as trustee during the children's minority, secured advance court approval. The cited Utah cases convince us that the decree is valid to the extent that it serves the above purposes during the children's minority. The decree goes farther, however. It effectively divests Mr. Farley of all interest in the land for the purpose of vesting it, or its remaining proceeds, in the children *when they reach adulthood.*[1] The Utah court has attempted an *inter vivos* disposition of the husband's estate for the benefit of his adult children. No Utah case has been brought to our attention which lends direct or inferential support to such a disposition upon divorce; nor, in our view, may the broad language of the Utah statute be stretched to such an extreme.

Absent a Utah statute or decision covering the case, we presume that Utah law is harmonious with that of California, thus looking to our own law for a solution. (Code Civ. Proc., § 1963, subds. 16, 17; *Gagnon Co., Inc.* v. *Nevada Desert Inn, Inc., supra,* 45 Cal.2d at p. 454.) In California such a disposition of the husband's estate exceeds a divorce court's power. (*Miller* v. *Miller,* 52 Cal.App.2d 443 [126 P.2d 357].) The Utah statute and Utah decisions lend no support to this award; the presumption of parallel doctrines impels its rejection. We conclude that the award exceeds the jurisdiction of the Utah court to the extent that it decrees transfer of property or money to the children when they reach adulthood. The lack of jurisdiction appears on the face of the Utah decree.

Utah law, like that of California, has it that a judgment

---

[1]Specifically, the Utah decree directed conveyance of the trust property to the two children when the younger (a daughter) reached the age of 18. The provision was undoubtedly drawn in view of Utah law conferring adult status on females at the age of 18. (Utah Code Ann., § 15-2-1, 1953.)

may be collaterally attacked when it discloses on its face an order in excess of jurisdiction. (*Intermill* v. *Nash*, 94 Utah 271 [75 P.2d 157, 162]; *Salt Lake City* v. *Industrial Commission*, 82 Utah 179 [22 P.2d 1046, 1048]; see 29 Cal.Jur.2d, Judgments, § 185, pp. 141-143.) Defendant's present collateral attack must nevertheless surmount the hurdle created by his participation in the Utah divorce proceedings.

We have discovered no Utah case law specifically dealing with participation in prior litigation as a factor precluding collateral attack on judgments. Under the full faith and credit decisions of the federal Supreme Court, a defendant may not claim lack of fundamental jurisdiction on the part of the foreign court if the jurisdictional issue has been fully and fairly litigated there. (*Sherrer* v. *Sherrer, supra,* 334 U.S. 343 [68 S.Ct. 1087, 1097, 92 L.Ed. 1429, 1 A.L.R.2d 1355]; *Baldwin* v. *Iowa State Traveling Men's Assn.,* 283 U.S. 522, 525-526 [51 S.Ct. 517, 75 L.Ed. 1244, 1246-1247].) The same rule applies to cases involving real property. (*Durfee* v. *Duke,* 375 U.S. 106 [84 S.Ct. 242, 11 L.Ed.2d 186].)

The rule of jurisdictional finality should apply with even more vigor when the subject of attack is not the original court's lack of fundamental jurisdiction but a grant of relief exceeding its defined judicial power. ▪ A California general rule now accords res judicata effect to a judgment or decree which rests upon fundamental jurisdiction but exceeds statutory limits upon relief, permitting collateral attack only under unusual circumstances which prevented an earlier and more appropriate attack. (*Pacific Mut. Life Ins. Co.* v. *McConnell,* 44 Cal.2d 715, 725-727 [285 P.2d 636]; 1 Witkin, Cal. Procedure, pp. 411-412; *ibid.,* 1963 Supp. pp. 157-158.) The rule is consistent with decisions invoking consent or estoppel as an *ad hominem* barrier to collateral attack on a divorce decree making an award outside the normal sphere of divorce court jurisdiction, where the objecting party himself tendered the issue or consented to its disposition. (*Spahn* v. *Spahn,* 70 Cal.App.2d 791, 796 [162 P.2d 53]; *Morrow* v. *Morrow,* 40 Cal.App.2d 474, 485 [105 P.2d 129].) It is also consistent with decisions permitting collateral attack where the divorced spouse had no notice or warning that an award in excess of jurisdiction would be sought in the divorce action. (*Craft* v. *Craft,* 49 Cal.2d 189, 193 [316 P.2d 345]; *Burtnett* v. *King,* 33 Cal.2d 805, 811 [205 P.2d 657, 12 A.L.R.2d 333]; compare, however, *Carter* v. *Carter,*

148 Cal.App.2d 845 [307 P.2d 630] ; *Vasquez* v. *Vasquez*, 109 Cal.App.2d 280 [240 P.2d 319].) We apply these concepts in the absence of contrary Utah decisions.

 Thus we arrive at the final question, whether Mr. Farley's participation in the Utah divorce litigation occurred under such circumstances as would preclude collateral attack. He did not voluntarily enter divorce litigation in a state where he had no residence, choosing first to tender a disputed issue to disposition by a foreign court, then seeking collateral attack to evade an adverse decision. (Cf. *Sherrer* v. *Sherrer*, *supra*, 334 U.S. 343 [68 S.Ct. 1087, 1097, 92 L.Ed. 1429, 1 A.L.R.2d 1355] ; *Barber* v. *Barber*, *supra*, 51 Cal.2d 244; *Heuer* v. *Heuer*, *supra*, 33 Cal.2d 268.) The courts of Utah, as the state of marital domicile, had jurisdiction of the marital status and, after service of process, of defendant's person. His submission to Utah jurisdiction was an imposed condition of resistance, not a matter of free choice. There is no evidence that he voluntarily submitted the 41-acre tract, his premarital property, to the Utah court for any disposition at all, let alone the disposition which actually ensued. (Cf. *Spahn* v. *Spahn*, *supra*, 70 Cal.App.2d 791.) True, he did request the Utah court to substitute the north half of the property for the south half originally awarded. That act does not signify voluntary submission to the property disposition. It signifies only that defendant may have been constrained by necessity to make the best of a bad situation without acceding to the situation itself. At no time did he make any move to comply with the order directing conveyance, and he left Utah pending a contempt proceeding. What evidence we have is consistent with resistance rather than voluntary submission.

The most significant circumstance militating against defendant is his failure to attack the Utah decree directly by appeal. The law of Utah gave him ample opportunity to contest the property award by means of an appeal.[2] While failure to appeal may preclude collateral attack in some circumstances, it is not an automatic bar. (See *Craft* v. *Craft*, *supra*, 49 Cal.2d at p. 192; cf. *United States* v. *Eastport Steamship Corp.*, 255 F.2d 795, 804.) It is but one factor in determining whether the case presents unusual circum-

---

[2]The Utah decree was entered October 3, 1958. Utah law permits filing of notice of appeal within one month after entry of decree. (Rule 73(a), Utah Rules of Civil Procedure, vol. 9, Utah Code Ann. 1953.)

stances which make jurisdictional contest by collateral attack just as appropriate and just as consistent with fair play as direct attack in the original litigation. ■ Under the particular facts here defendant's failure to appeal does not bar him. Mrs. Farley suffered no change of position as a result of that failure. Reversal on appeal would not have resulted in a redistribution of assets between husband and wife, because the provision in excess of jurisdiction affected only the husband's relationship with his children and was not for the wife's benefit at all. Mrs. Farley told the Utah court that she intended to move to California following the decree, and she did so. She now litigates in California as she might have in Utah, suffering no disadvantage from defendant's failure to appeal in the original litigation. The arena of judicial contest has simply been moved from Utah to California. In view of her own move to California, attack on the disputed decree became at least as appropriate in California as by pursuit of an appeal in Utah. Consequently, defendant's failure to exhaust all theoretically available Utah processes, including appeal, does not foreclose collateral attack.

■ We do not decide whether the award for benefit of the adult children transcended the Utah court's subject matter jurisdiction or merely exceeded its statutory power. (See *Aldrich* v. *Aldrich*, 375 U.S. 249 [84 S.Ct. 305, 11 L.Ed.2d 304].) Opportunity for collateral attack is at least as broad in the former case as the latter. (See *Pacific Mut. Life Ins. Co.* v. *McConnell, supra,* 44 Cal.2d at pp. 725-726.) Thus we have assumed that the latter characterization is appropriate for the purpose of this decision.

■ We conclude that the Utah decree, so far as it directed conveyance of the land, its proceeds or income to defendant's children upon their reaching adulthood, exceeded the jurisdiction of the Utah court, that it is vulnerable to collateral attack in Utah and not entitled to full faith and credit in California. Plaintiff urges, nevertheless, that she is entitled to a similar disposition at the hands of the California courts as a matter of comity. (See *Biewend* v. *Biewend,* 17 Cal.2d 108, 113 [109 P.2d 701, 132 A.L.R. 1264].) California courts have no more jurisdiction to fashion such a decree than did the Utah court. (*Miller* v. *Miller, supra,* 52 Cal.App.2d 443.)

Judgment in the quiet title action is reversed. To the extent that the decree establishing the Utah divorce decree ex-

cludes paragraphs 7 and 8 of the latter, it must be modified. In order to accomplish that result we reverse the exclusion provision of the decree and remand to the trial court for further proceedings consistent with this opinion.[3]

Pierce, P. J., and Schottky, J., concurred.

The petitions of the appellant and the respondent for a rehearing were denied May 25, 1964, and their petitions for a hearing by the Supreme Court were denied June 24, 1964.

---

[3]Those aspects of paragraphs 7 and 8 which provide for the children during their minority and are entitled to full faith and credit are more particularly described on pages 6-7, *ante*.