[Civ. No. 979.   Fifth Dist.   Feb. 25, 1969.]

NORMA BIERL, Plaintiff and Respondent, v. GEORGE B. McMAHON, Defendant and Appellant.

LaCoste, Keller, Reid & Azevedo and Norman S. Reid for Defendant and Appellant.

Cardozo, Trimbur & Nickerson and Gary S. Davis for Plaintiff and Respondent.

STONE, J.—This appeal is from a judgment establishing what is purported to be a child support order entered in the State of Nebraska "as a judgment in this state, with full force and effect," and, in addition, ordering appellant to pay to respondent "the sum and all future sums as they become due in accordance with the provisions of the judgment above mentioned."

In the Nebraska action the parties were reversed, that is, the mother, respondent in this action, was the defendant in the divorce action, while appellant father, the defendant in this action, was there the plaintiff. In the Nebraska divorce action the court awarded the father a divorce, awarded custody of the minor daughter of the parties to the mother, and ordered the father to pay the clerk of the court $75 per month "to be transmitted to plaintiff for the child's support." Some time later, the mother instituted a proceeding in the Nebraska court to have the terms of custody changed in order that she might take the child with her to live in California as she planned to marry a California resident. The father countered with a motion for a reduction in the amount of child support. The mother testified that the man she intended to marry wished to support the child and objected to the father

contributing to the support of the child. The mother asked that support money, in lieu of being paid to her for child support, be invested in a trust of some sort to take care of the daughter's future needs if she desired to attend college. The father attempted to protest the making of such an order, but the court advised him to remain silent and permit his attorney to speak for him. Neither the father nor his attorney acquiesced in the making of the order or agreed to its terms; it was made solely at the request of the mother and in accordance with her suggestion.

The order, made June 10, 1950, reads as follows: "That the support allowances be modified, and the Plaintiff hereafter be required to pay to the Clerk of this Court the sum of $25.00 per month until such marriage, and then in view of the defendant's testimony that she desires the support money should be invested and saved for the daughter for her education and future use, it is ordered that the Plaintiff, after such marriage, be authorized and directed to invest the sum of $25.00 per month in either government bonds in the name of the daughter or a savings account in a local bank for her, and from time to time to furnish proof of such investment, all subject to modification in case of need."

No appeal was taken from the order, nor has it been modified by the Nebraska court.

Appellant made payments to the clerk of the court as required by the order, until the mother's remarriage. He did not thereafter invest $25 per month for the benefit of the daughter, as prescribed in the order.

In July 1966, respondent filed this action to establish the order as a judgment of this state. Appellant, by way of answer, denied the validity of that part of the order requiring him to invest $25 per month in the name of his daughter, asserting that the order was in excess of the jurisdiction of the Nebraska court, and therefore void. Following a trial to the court, a judgment was entered establishing the modification order set forth above as a California judgment. Additionally, the judgment provides: "That the defendant shall pay to the plaintiff the sum and all future sums as they become due in accordance with the provisions of the judgment mentioned above."

Appellant filed notice of appeal, and applied for, and was issued, a peremptory writ of prohibition staying a proposed contempt hearing on the California judgment pending the determination of this appeal by which appellant seeks a

reversal of the judgment. Respondent seeks a discharge of the prohibition.

The general rule is that an order embodied in a foreign decree of divorce providing for the support of a minor child can be and will be enforced by the California courts, under the full faith and credit clause or the doctrine of comity. (*Williams* v. *North Carolina,* 317 U.S. 287 [87 L.Ed. 279, 63 S.Ct. 207, 143 A.L.R. 1273]; *Worthley* v. *Worthley,* 44 Cal.2d 465 [283 P.2d 19]; *Farmers & Merchants Trust Co.* v. *Madeira,* 261 Cal.App.2d 503 [68 Cal.Rptr. 184].)

Appellant argues that this rule has a limitation, namely, that comity does not require enforcement of a Nebraska decree that it is in excess of the Nebraska court's jurisdiction, as was the order here where no present need was shown.

In resolving the question, we look first to the Nebraska law. Nebraska courts have consistently held that the courts of their state derive jurisdiction in divorce actions from statute. (*Detter* v. *Erpelding,* 176 Neb. 600 [126 N.W.2d 827, 834].) It also has been held that where a trial court grants relief in a divorce or child support action not authorized by statute, the decree is ineffective and void upon collateral attack. (*Detter* v. *Erpelding, supra; Harrington* v. *Grieser,* 154 Neb. 685 [48 N.W.2d 753]; *Cizek* v. *Cizek,* 69 Neb. 800 [99 N.W. 28].) We have been cited no authority for the proposition that a Nebraska court has authority to order a parent to make payments into a fund, not for present needs of the child, but to accumulate in the event the child might later need support.

Since no Nebraska statute or decision covering precisely this point has been cited, and we find none, we must assume the Nebraska law "is not out of harmony with ours and thus we look to our law for a solution of the problem." (*Gagnon Co., Inc.* v. *Nevada Desert Inn, Inc.,* 45 Cal.2d 448, 454 [289 P.2d 466]; *Farley* v. *Farley,* 227 Cal.App.2d 1, 7 [38 Cal.Rptr. 357]; *Aldabe* v. *Aldabe,* 209 Cal.App.2d 453, 471 [26 Cal. Rptr. 208].)

The concept of child support in California is governed by two standards, the need of the child and the ability of the parent to pay. (*Dimon* v. *Dimon,* 40 Cal.2d 516, 524 [254 P.2d 528] (overruled on another point in *Hudson* v. *Hudson,* 52 Cal.2d 735, 744-745 [344 P.2d 295]); *Dougal* v. *Dougal,* 143 Cal.App.2d 272, 276 [299 P.2d 404]; *Campbell* v. *Campbell,*

178 Cal.App.2d 77, 82 [2 Cal.Rptr. 710].) Sometimes the need shown is tempered by the father's ability to pay, but we are aware of no case where a father has been required to pay support absent a showing of need. Here, the mother expressly denied need or desire for help in supporting the child after her remarriage. Since the father's ability to pay is irrelevant under the circumstances, the question narrows to whether the court had jurisdiction to make an order for payment contingent upon future need.

Respondent cites a number of Nebraska cases confirming the jurisdiction of a court to order a parent to provide security to insure that support payments are made, and even to create a trust fund as the source of support payments, but these cases, like similar cases in California, implement orders for support based upon *present need*. They do not require a parent to establish a fund to meet future needs should they arise.

A California case much nearer to respondent's position than any of the cases cited, *Franklin Life Ins. Co.* v. *Kitchens,* 249 Cal.App.2d 623 [57 Cal.Rptr. 652], upheld an order that the father keep an insurance policy in force until the youngest of three children reached adulthood. But even in that case the order requiring the contingent security, a life insurance policy, was for the purpose of insuring that should the father die the present needs of the minor children would be met by life insurance because the father had no appreciable estate that would secure such payments. The order was based upon a showing of present and continuing need, the one element that is lacking in the case at bench.

The only authority squarely in point, that we find, is a Michigan case, *Stuart* v. *Stuart,* 331 Mich. 30 [18 N.W.2d 266], wherein the court ordered a husband to pay $275 a month for the support of the children, of which $175 was to be used for present needs, the additional $100 to be "retained in the hands of a friend of the court" for indefinite future needs of the children. On appeal, the court ordered the part of the decree requiring payment of $100 per month "for the trust fund" stricken, stating that while the statute authorized the requirement of a bond to assure payment of allowances for children, the statute did not expressly authorize the requirement of monthly payments into a trust fund for future use; the court said it could find no authority for such procedure.

In *Primm* v. *Primm,* 46 Cal.2d 690, the Supreme Court said, at page 694 [299 P.2d 231]: "Under sections 138

and 139 of the Civil Code the court may make necessary or proper provision for the custody, care and education of the minor children of the parties but its jurisdiction to make such orders is limited to the conditions and circumstances existing at the time they are made, and the court cannot then anticipate what may possibly thereafter happen and provide for future contingencies.''

Absent citation of Nebraska law to the contrary, we assume the law of Nebraska is the same as that expressed above in *Primm* v. *Primm*.

However, our conclusion that the Nebraska court exceeded its jurisdiction over the subject matter in making the order, does not dispose of the case; it leads to an even more vexing question, whether appellant is precluded from collaterally attacking the order by reason of his failure to appeal from the Nebraska order.

''A California general rule now accords res judicata effect to a judgment or decree which rests upon fundamental jurisdiction but exceeds statutory limits upon relief, permitting collateral attack only under unusual circumstances which prevented an earlier and more appropriate attack.'' (*Farley* v. *Farley, supra,* 227 Cal.App.2d at p. 8.)

In short, only in unusual instances does a California court refuse to apply the doctrine of estoppel in the face of res judicata when an attack is made on a foreign decree in the California court upon the ground the foreign decree exceeds that court's jurisdiction of subject matter. Discussing estoppel in such a situation, Chief Justice Traynor said, in *In re Griffin,* 67 Cal.2d 343, at page 348 [62 Cal.Rptr. 1, 431 P.2d 625] : ''Whether he shall be estopped depends on the importance of the irregularity not only to the parties but to the functioning of the courts and in some instances on other considerations of public policy.'' (See also *Pacific Mut. Life Ins. Co.* v. *McConnell,* 44 Cal.2d 715, 727 [285 P.2d 636] ; *Farley* v. *Farley, supra,* 227 Cal.App.2d at p. 7.)

The facts of this case parallel those of *Farley* v. *Farley, supra,* where collateral attack was permitted. There, as here, the appellant was a resident of the state in which the divorce action was brought and had no choice but to submit to the jurisdiction of the court in the state of marital domicile. This distinguishes the case from those where the party attempting a collateral attack on a judgment submitted to the jurisdiction of a foreign court.

*Farley* relates that the appellant therein did not willingly

agree to the order under attack; here, the appellant personally attempted to object to an order establishing a contingency support fund and was told by the court to remain silent and let his attorney speak. The attorney protested the order, but the court made it nonetheless, and made it according to the wishes expressed by the wife in open court. In *Farley*, the appellant returned to the Utah court and obtained a modification of the order. Here, appellant obeyed that portion of the order requiring payment of support money up to the date of the wife's remarriage, at which time the contingency order took effect, and refused to comply thereafter. Thus appellant is in a more favorable position to argue that he is not estopped to collaterally attack the decree of a foreign court than was the appellant in *Farley*.

Moreover, estoppel, an equitable doctrine, rests upon the totality of circumstances, not upon an inflexible rule of law, although equitable rubrics occasionally give a contrary impression, and we must look to all of the circumstances surrounding the making of the order, and to the ultimate effect if it is enforced. The mother planned to remarry and to take the child with her from Nebraska to California. She advised the court that the man she intended to marry did not want her to accept any support for the child. The mother asked the court, in lieu of support payments to her, to set up a contingency fund at the rate of $25 a month in case of future need for support or education of the child. This the court did. The mother took the child to California where, some 16 years later, she brought this action to enforce the order. Under like facts, the reviewing court said in *Farley* v. *Farley, supra,* 227 Cal. App.2d at page 10: "In view of her own move to California, attack on the disputed decree became at least as appropriate in California as by pursuit of an appeal in Utah. Consequently, defendant's failure to exhaust all theoretically available Utah processes, including appeal, does not foreclose collateral attack."

There are technical reasons in addition to the Nebraska court's lack of jurisdiction, that compel a reversal of the California judgment. Implicit in the Nebraska order is the requirement that need be shown, either for general support of the child or for her education; the record before us is devoid of such a showing. Also, the child is now 21 years of age, and were payment to be made to the child it would run afoul of the rule expressed in *Farley* v. *Farley, supra,* appearing in 3 A.L.R.3d, page 1176, "holding that while the Utah statute

authorized the creation of a trust to secure the support of the children during their minority, the trust could not validly provide for the transfer of the trust property to the children when they reached maturity. It was indicated, arguendo, that the same result would be reached under California law.''

Moreover, the California court, contrary to the Nebraska decree, ordered appellant to pay the money found to be due, to respondent; the Nebraska order was that appellant deposit the money in the name of the child. In the absence of some justification in the record for payment to the mother instead of to the child, the effect would be to require appellant to deliver his separate property to his former wife.

It is not clear to us on just what ground respondent claims a right to the money in view of the language of the Nebraska order, but if it is under the guise of reimbursement for money paid by her for the child's support in the past, not only is the record devoid of supporting evidence but it is contrary to the rule stated in numerous California cases, that a mother cannot claim reimbursement for money paid out in support of a child prior to an order of the court directing the father to pay support to meet the current needs of the child. (See *Dimon* v. *Dimon, supra,* 40 Cal.2d 516, 524; *Dougal* v. *Dougal, supra,* 143 Cal.App.2d 272, 276; *Primm* v. *Primm, supra,* 46 Cal.2d 690.)

The judgment is reversed; the writ of prohibition is dissolved.

Conley, P. J., and Gargano, J., concurred.