[Civ. No. 33592. Second Dist., Div. Five. May 22, 1970.]

Estate of GAETANO LA MOTTA, Deceased.
BALDO M. KRISTOVICH, as Public Administrator, etc.,
Petitioner and Respondent, v.
HOUSTON I. FLOURNOY, as State Controller, Objector and Appellant;
EDWARD O. BALLARD, Claimant and Respondent.

[Civ. No. 34193. Second Dist., Div. Five. May 22, 1970.]

Estate of FRANK EDWARD YOUNG, Deceased.
BALDO M. KRISTOVICH, as Public Administrator, etc.,
Petitioner and Respondent, v.
HOUSTON I. FLOURNOY, as State Controller, Objector and Appellant;
EDWARD O. BALLARD, Claimant and Respondent.

[Civ. No. 34536. Second Dist., Div. Five. May 22, 1970.]

Estate of MAGGIE MURRAY, Deceased.
BALDO M. KRISTOVICH, as Public Administrator, etc.,
Petitioner and Respondent, v.
HOUSTON I. FLOURNOY, as State Controller, Objector and Appellant;
EDWARD O. BALLARD, Claimant and Respondent.

(Consolidated Appeals.)

COUNSEL

Thomas C. Lynch, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Objector and Appellant.

John D. Maharg, County Counsel, and Gerald F. Crump, Deputy County Counsel, for Petitioner and Respondent.

MacFarlane, Schaefer & Haun and Jeremy V. Wisot for Claimant and Respondent.

OPINION

KAUS, P. J.—These three consolidated appeals from portions of orders settling the first and final accounts and reports of the public administrator present common questions of law. Although there are slight procedural differences, they are immaterial to the determinative issues. For the sake of simplicity we shall discuss the facts and issues as if a single appeal were pending.

The public administrator petitioned for letters of administration alleging that the decedent had died in Los Angeles County over 10 years before, that the estate consisted of certain personal property, that no will had been found and that the heirs were unknown. Letters issued.

One Edward O. Ballard then filed a petition for compensation "re dis-

covery of estate assets." In that petition he claimed that the assets of the estate had been located by his efforts and that the reasonable value of his services was one-third of the value of the assets. The only asset of the estate was a bank account which had long been dormant.

The public administrator did not oppose Ballard's petition and it was approved by the court. The administrator was directed to pay Ballard the amount claimed as compensation for his services. No appeal from that order was taken.

Later the public administrator filed his first and final account. Since no heirs had been located, the account was duly served on the State of California as required by section 1027 of the Probate Code. This was the state's first notice of the pending proceeding. It filed objections to that portion of the account in which the public administrator set forth Ballard's previously approved compensation as a credit. Among the state's various contentions was one that "there is no authority to allot a portion of the estate to Edward O. Ballard."[1] At the hearing on the objections, the state offered to prove that all that Ballard had done was to check lists of presumptively abandoned bank accounts (Code Civ. Proc., § 1502) which had been reported to the State Controller pursuant to section 1510 of the Code of Civil Procedure and published in compliance with the provisions of section 1511.[2] In the normal course of events these bank accounts would have escheated to the state without probate. (Code Civ. Proc., § 1512 et seq.)

The offer of proof was rejected, the court holding that the previous order authorizing payment to Ballard was res judicata.

■■ We hold that in authorizing payment to Ballard the probate court exceeded its jurisdiction and that, under the circumstances of this case, the order was not res judicata.

In locating the bank account and determining that the depositor had died, Ballard did precisely what the Legislature had prescribed as one of the duties of the public administrator. These are set forth in section 1140 of the Probate Code which reads in part as follows: "The public administrator of each county must take immediate charge of the property within his county of persons who have died, when no executor or administrator has been appointed, and in consequence thereof the property, or any part

---

[1]The key ruling was made in the LaMotta estate. In the *Young* and *Murray* cases it was agreed that they presented the same problems as *LaMotta*.

[2]These were the section numbers in effect at the time. The Uniform Disposition of Unclaimed Property Act (Code Civ. Proc., pt. 3, tit. 10, ch. 7) was later amended by the Legislature (Stats. 1968, ch. 356, § 2, p. 739, operative Jan. 1, 1969) and now is entitled the "Unclaimed Property Law." (Code Civ. Proc., § 1500.)

thereof, is being wasted, uncared for, or lost; . . ." We need not decide whether the reward for efforts by the public administrator in locating abandoned assets and connecting them to persons who have died and whose estates are not being administered, is part of the normal commission to which he is entitled or whether, in some cases, he may be entitled to compensation for extraordinary services. What is certain is that the Legislature never intended that the probate court have authority to order payment to a volunteer, such as Ballard, for services which are part of the public administrator's official functions. Section 1142 of the Probate Code prescribes that the public administrator is to receive the same compensation and allowances as are granted to other administrators. ■ The statutory provisions concerning such compensation and allowances are found in section 900 et seq. of the same code. In our opinion these provisions exhaust the power of the probate court to order payment from decedents'· estates for duties performable by the public administrator. Any other holding would open a Pandora's box of problems caused by helpful strangers whose unsolicited efforts in locating assets substantially deplete the estate.

The question is not one of fundamental jurisdiction but rather whether the court acted in excess thereof. The distinction between the two concepts was crystalized in *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 288-290 [109 P.2d 942, 132 A.L.R. 715]: "Thus a probate court, with jurisdiction of an estate, and therefore over the appointment of an administrator, nevertheless acts in excess of jurisdiction if it fails to follow the statutory provisions governing such appointment. (*Texas Co.* v. *Bank of America,* 5 Cal. (2d) 35, 39 [53 Pac. (2d) 127].) The superior court may have jurisdiction over a cause of action and the parties to a suit for libel, but in the case of nonresidents, a bond for costs is required by statute, and unless such bond is filed, it is without jurisdiction to proceed, and will be restrained by writ of prohibition. (*Shell Oil Co.* v. *Superior Court,* 2 Cal. App. (2d) 348 [37 Pac. (2d) 1078]; see, also, *Carter* v. *Superior Court,* 176 Cal. 752, 757 [169 Pac. 667].) A court with jurisdiction over a cause may hear and determine it and give judgment, but it cannot award costs in a situation not provided by statute. (*Michel* v. *Williams,* 13 Cal.App. (2d) 198 [56 Pac. (2d) 546].) The superior court may have jurisdiction over a particular cause, but a disqualified judge may not sit and hear it if objection to his qualifications is raised, and prohibition will lie to prevent him from trying it. (*Hall* v. *Superior Court,* 198 Cal. 373, 387 [245 Pac. 814].) Where an injuction is sought against enforcement of a public statute, the court, despite its general equitable powers, has no jurisdiction to issue it. (*Loftis* v. *Superior Court,* 25 Cal. App. (2d) 346, 352 [77 Pac. (2d) 491]; *Reclamation Dist.* v. *Superior Court,* 171 Cal. 672 [154 Pac. 845].) A court may have jurisdiction to grant a new trial after motion based upon

proper statutory grounds, but has no jurisdiction to make the order unless the moving party has given his notice of intention within the prescribed statutory time. (See *Peters* v. *Anderson,* 113 Cal. App. 158 [298 Pac. 76].) The court has power under section 473 of the Code of Civil Procedure to set aside its judgment or order on motion where it was entered against a party through inadvertence, excusable neglect, or mistake; but that power is wholly lost at the end of the six months' period prescribed by statute. (*Estate of Hunter,* 99 Cal. App. 191, 196 [278 Pac. 485].) An appellate court may have power to hear and determine a particular case on appeal, but is without jurisdiction to do so unless the procedural step of notice of appeal within the prescribed statutory time is taken. (*Aregood* v. *Traeger,* 94 Cal. App. 227 [270 Pac. 1002].) And if the notice is given before judgment is actually rendered, the premature appeal will be dismissed (*Aspegren & Co.* v. *Sherman, Swan & Co.,* 199 Cal. 532 [250 Pac. 400]), or a lower appellate court may be prevented from hearing it by writ of prohibition. (*Shriver* v. *Superior Court,* 48 Cal. App. 576, 582 [192 Pac. 124].) After reversal of judgment with directions to the lower court, it has jurisdiction to enter judgment, but is limited by the directions of the appellate court and is without jurisdiction to permit amended pleadings to raise new issues; hence prohibition will lie to prevent it from retrying the case. (*Lial* v. *Superior Court,* 133 Cal. App. 31 [23 Pac. (2d) 795].) The same is true where the superior court, in an appeal from a justice's court on questions of law alone, attempts to try the cause *de novo.* (*Sour* v. *Superior Court,* 1 Cal. (2d) 542 [36 Pac. (2d) 373].)

"On a number of occasions the courts of this state have recognized the conflicting senses in which the term 'jurisdiction' is used, and have emphasized the point that in applications for prohibition or *certiorari,* the broader meaning is involved. In our own recent decision, *Rodman* v. *Superior Court,* 13 Cal. (2d) 262 [89 Pac. (2d) 109], we said: '. . . some confusion exists with reference to what constitutes an excess, and what constitutes an error, in the exercise of jurisdiction. However, it seems well settled (and there appears to be no case holding to the contrary) that *when a statute authorizes prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction, and certiorari will lie to correct such excess.'* " (Italics added.)

Even before *Abelleira* it had been held in *Stevens* v. *Stevens,* 215 Cal. 702, 704 [12 P.2d 432] that where the statute then in effect prescribed that attorney fees in divorce actions were payable to the party which was awarded the fee, a direct award to the attorney was in excess of the court's jurisdiction. (See also *Hagan* v. *Superior Court,* 53 Cal.2d 498, 502-503 [2 Cal.Rptr. 288, 348 P.2d 896].)

Other examples of acts held to be in excess of jurisdiction may be found in Witkin, California Procedure (1954) pages 389-410. Without belaboring the point, we are quite satisfied that the orders to which the state objects are well on the wrong side of the dividing line between a mere error and an act in excess of jurisdiction.

This does not, however, automatically dispose of the res judicata problem. In most of the decided cases which distinguish between error within a court's jurisdiction and acts in excess thereof, the question was the availability of a writ such as prohibition or certiorari. Whether or not an order in excess of jurisdiction may be collaterally attacked is another matter. ■ . It is well established that the doctrine of res judicata applies to probate proceedings. (*Estate of Radovich,* 48 Cal.2d 116, 122 [308 P.2d 14]; *Burchell* v. *Strube,* 43 Cal.2d 828, 835 [279 P.2d 1]; *Estate of Werfel,* 116 Cal.App.2d 167, 172 [253 P.2d 79]; but see *Estate of Doane,* 62 Cal.2d 68 [41 Cal.Rptr. 165, 396 P.2d 581].)

The determinative decision on the problem is *Pacific Mut. Life Ins. Co.* v. *McConnell,* 44 Cal.2d 715, 727 [285 P.2d 636]. There the court, after stating the general rule that a judgment of a court having fundamental jurisdiction is res judicata even though contrary to statute and therefore in excess of jurisdiction, held that such a "judgment may be collaterally attacked where unusual circumstances were present which prevented an earlier and more appropriate attack."

The principle announced in that case was applied in *Farley* v. *Farley,* 227 Cal.App.2d 1 [38 Cal.Rptr. 357], in favor of a husband who had permitted a Utah decree within the fundamental jurisdiction of the Utah court but in excess thereof, to become final in that state. Without detailing the reasons given by the court, we are satisfied that the state's position in the case at bar is far more appealing to one's fundamental sense of justice than that of the husband in *Farley,* who had fully participated in the Utah proceedings. ■ Since the Probate Code does not require notice to the state until there is an application for distribution of an estate (Prob. Code, § 1027), although the administrator at no time knows of the existence of heirs, the only "distributee" on the horizon had never been notified of an application for compensation which would deplete the estate by one-third. The application had not been opposed by the public administrator whose duty was the preservation of the estate for the eventual distributee. Surely these circumstances were sufficiently "unusual" that the court should have permitted the original orders, virtually ex parte, to be attacked when the state's first opportunity to do so arose.

We have purposely not adverted to the fact that the jurisdiction of the probate court is in rem and that, therefore, its decrees are binding on the

whole world. (*Estate of Radovich,* 48 Cal.2d 116, 120 [308 P.2d 14].)
    The essential difference between the res judicata effect of in rem, as contrasted to in personam judgments, is the range of persons upon whom they are conclusive. (Rest., Judgments, §§ 2, 73.) Our analysis of the problem does not depend on the nature of the probate court's jurisdiction, but on that court's order in excess thereof. We therefore find it unnecessary to reach two issues, the resolution of which might possibly lead to the same result.[3]

The orders appealed from are reversed to the extent that they order, authorize or approve any payment to Edward O. Ballard and allow the administrator a credit on account of any such payment.

Stephens, J., and Aiso, J., concurred.

---

[3]The first such issue would deal with the possible application of the principle recognized in *Estate of Clarke,* 66 Cal.2d 142, 147 [56 Cal.Rptr. 897, 424 P.2d 337], where the Supreme Court refused to give res judicata effect to an in rem decree in a probate matter under circumstances arguably analogous to those in the case at bar.

The other issue is of constitutional dimensions and may, some day, have to be decided. We respectfully suggest that a simple amendment to the Probate Code might make it unnecessary ever to do so. It is this: while section 441 demands that notice of a petition for letters be mailed to the heirs named in the petition, there is no statutory provision for a similar notice to the state, although the petition reveals, as here, that the identities and whereabouts of the heirs are unknown. (*Mullane* v. *Central Hanover Tr. Co.,* 339 U.S. 306 [94 L.Ed. 865, 70 S.Ct. 652]; see also *Schroeder* v. *City of New York,* 371 U.S. 208, 211-213 [9 L.Ed.2d 255, 258-260, 83 S.Ct. 279, 89 A.L.R.2d 1398]; *Walker* v. *Hutchinson City,* 352 U.S. 112, 116 [1 L.Ed.2d 178, 182, 77 S.Ct. 200].)